### IN THE

# SUPREME COURT

### OF THE

# STATE OF WYOMING.

## APRIL TERM, 1892.

### MCKINNEY v. STATE.

(June 20, 1892.)

CRIMINAL LAW—SENTENCE— CONTINUANCE—JURY—RIGHT TO WOMEN AS JURORS —CONSTITUTIONAL LAW—NEW TRIAL—REVIEW ON APPEAL.

1. A court may sentence a convict to a prison located in another state, when authorized to do so by law. Kingen v. Kelley, ante, 566, 28 Pac. Rep. 36, followed.

2. A continuance in a criminal case because of the absence of witnesses is properly denied where substantially the same testimony as they would give is offered at the trial, or where their testimony is immaterial.

3. The action of the court in overruling a motion for a continuance for a reasonable time to enable the depositions of absent witnesses to be taken will not be reviewed on appeal if no exception was taken to the ruling.

4. The exclusion of women from the jury on the criminal prosecution of a man does not deprive him of the rights, privileges, and immunities accorded to him by Const. U. S. Amend. 14, since the amendment only prohibits discrimination because of race or color, and not because of sex.

5. Even if a woman on a criminal prosecution would have a right to women on the jury, under Const. art. 6, § 1, declaring that both male and female citizens shall equally enjoy all civil, political, and religious rights and privileges, a male citizen, on a prosecution against him, cannot complain that women were excluded from the jury, since the right of women to sit as jurors, if it is a right, can only be asserted by a woman.

6. If a motion for a new trial for error of law is filed after the expiration of the three days from the time the verdict was rendered, within which it is required to be filed by Rev. St. § 3348, as amended by Laws 1890, c. 73, and no good excuse for the delay is shown, the motion is properly overruled.

7. If a motion for a new trial is not filed within the time fixed by the statute, all errors occurring at the trial are waived.

8. The action of the court in overruling a motion to quash the entire panel of jurors, interposed before the trial began, if excepted to at the proper time, will be considered on appeal, though it may have been unnecessarily embodied in a motion for a new trial which was properly overruled because not filed within the time prescribed by the statute.

9. Facts set forth only in an affidavit in support of a challenge to the array of the petit jury, purporting to give copies of the orders of the court below and journal entries in relation to the discharge of the regular panel of the petit jurors summoned for the term, and the ordering and summoning of a new panel, cannot be considered by the appellate court. The journal entries should be authenticated by the clerk, or if they are not full and explicit the facts should be brought up in a properly certified bill of exceptions.

Error to district court, Laramie county; RICHARD H. SCOTT, Judge.

McKinney v. State.

Kinch McKinney was convicted of grand larceny, and brings error. Affirmed.

*Henry St. Rayner*, for plaintiff in error. *Charles N. Potter*, Atty. Gen., for the State.

Groesbeck, C. J. The plaintiff in error was convicted in the district court of Laramie county, Wyo., on the 22d day of January, 1891, of the crime of grand larceny. He was indicted for feloniously stealing, taking, carrying away, leading away, and driving away, 8 head of neat cattle, of the property of the Swan Land & Cattle Company, and 18 head of neat cattle, of the property of the Laramie River Cattle Company, in the said county of Laramie, each of the value of $15. He was sentenced by the court to imprisonment in the penitentiary for the term of 8 years. The petition in error and transcript containing the journal entries and the bill of exceptions were filed in this court September 3, 1891, and the cause was heard and submitted at the present term. Under the rules of this court, criminal causes have the precedence over other causes on the docket, and this cause is therefore determined in advance of other causes submitted. The assignments of error are disposed of hereafter in what seems to be their proper order.

1. The motion for a new trial was not filed within the statutory time, as it was filed five days after the verdict of the jury was rendered, instead of within three days thereafter, as required by the statute, which reads as follows: "An application for a new trial shall be by motion upon written grounds, which shall be filed at the term the verdict is rendered, and except for the cause of newly-discovered evidence material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial, shall be filed within three days after the verdict was rendered, unless additional time be granted by the court upon good cause shown." Rev. St. Wyo. § 3348, as amended by chapter 73, Sess. Laws 1890. The motion does not seek a new trial on the ground of newly-discovered evidence, but upon error of law occurring at the trial, nor does any reason appear, either in the motion or in the record, why this motion was not seasonably filed, nor was there any application made to the trial court for additional time in which to file it. Even when additional time is asked to file such a motion the applicant must show reasonable grounds for the delay, and the necessity for the delay, and, further, that sustantial reasons exist, in the interests of justice, requiring it. Bulliner v. People, 95 Ill. 394. No showing was made and no excuse was given for the delay. The rule is too firmly established to be shaken now, that the motion for a new trial must be made within the time fixed by the statute, or all errors occurring at the trial are waived. A trial court may overrule the motion for the sole reason that it was not filed in time, and this may have been the ground upon which the motion was overruled. No reason for the denial of the motion is shown by the record, but this failure to comply with the imperative terms of the statute would certainly be ground for overruling it. City of Evansville v. Martin, 103 Ind. 206, 2 N. E. Rep. 596; Kent v. Lawson, 12 Ind. 675; Bradshaw v. State, 19 Neb. 644, 28 N. W. Rep. 323; Ex parte Holmes, 21 Neb. 324, 32 N. W. Rep. 69; City of Osborne v. Hamilton, 29 Kan. 1; Hover v. Tenney, 27 Kan. 132; Lucas v. Sturr, 21 Kan. 480; Nesbit v. Hines, 17 Kan. 316; Bartlett v. Feeney, 11 Kan. 593; Odell v. Sargent, 3 Kan. 80. We cannot, therefore, inquire into any matters occurring at the trial, because this motion was filed too late.

2. We agree with counsel for plaintiff in error that we should consider the motion to quash the entire panel of 24 jurors summoned to serve at the term. It was interposed before the trial began, and could not have been considered by the court during the trial or after it. It was unnecessarily embodied in the motion for a new trial, and must be considered independently of it, as the exception was taken at the proper time, and in due form, to the action of the trial court in disallowing or overruling the motion to quash the panel.

3. However, we cannot consider the facts set forth in the affidavit in support of the challenge to the array, purporting to be copies of the orders of the court below in relation to the dismissal and discharge of the regular panel of the petit jurors summoned for the term. The matters complained of in this respect, and the ordering and summoning of a new panel of petit jurors on an open *venire*, are presented only by this affidavit of the plaintiff in error. It purports to set out journal entries of the court, and these are authenticated only by the affidavit. The journal entries should have been certified by the clerk, or in case these were not full and

McKinney v. State.

explicit the facts should have been exemplified in the bill of exceptions certified by the trial judge or the court. We cannot substitute the authentication of the record by a party to a suit for the proper authentication of the clerk, judge, or court. State v. Shaw, 5 La. Ann. 342; State v. Bruington, 22 La. Ann. 9; Ripley v. Coolidge, 1 Minor, (Ala.) 11; State v. Millain, 3 Nev. 425. As there is no properly authenticated record of the court, showing its action in discharging the regular panel of the petit jury, and ordering a new one for service during the term, we must disregard the assignments of error predicated thereon.

4. In the challenge to the array of the petit jury objection is also made to the jury because it was exclusively composed of male persons. It is urged that the constitution of this state requires that women, equally with men, shall be subject and eligible to jury duty, where they possess the same qualifications as men. Section 1 of article 6 of the constitution provides that "the rights of citizens of the state of Wyoming to vote and hold office shall not be abridged or denied on account of sex. Both male and female citizens of this state shall equally enjoy all civil, political, and religious rights and privileges." Section 9 of article 1, (bill of rights,) providing that the right of trial by jury shall "remain" inviolate in criminal cases, also provides that a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than 12 men, (not persons,) as may be prescribed by law. These provisions are borrowed from other constitutions, and were intended to maintain sacred and safe from legislative control the right of trial by jury already guarantied. The provision relating to grand juries, found in the same section, is that such bodies may consist of 12 "men," 9 of whom concurring may find an indictment, with power in the legislature to alter, regulate, or abolish the grand jury system. It has been the settled law of this jurisdiction, ever since its organization, that male electors only were qualified to serve as jurors, although for that period women have been entitled to vote and hold office as well as men. At one time it was held by the *nisi prius* courts of the territory of Wyoming that women were competent jurors, but that ruling was speedily overturned by the same courts. The question was never passed upon by the supreme court, either state or territorial. We have not much doubt

that women were not eligible as jurors under the territorial statutes, as the right to vote and hold office does not include the right, if right it may be termed, to serve as a juror. It is only when the legislature, by an unreasonable exercise of its functions in prescribing the qualifications of jurors, impairs the right of trial by jury, that its acts are unconstitutional. The constitutional provision that "the right of trial by jury shall remain inviolate" means that the right of jury trial shall not be destroyed or annulled by legislation, nor so hampered or restricted as to make the provision a nullity. "It would be obviously incompetent for the legislature to impose so many or such disqualifications as would restrict the number eligible to jury duty to a very small or select class; for this would substantially impair the right of trial by jury as it existed at the common law,—a thing which the foregoing provisions were designed to inhibit. Subject to this general reservation the enumeration of causes of disqualification has generally been left to the legislature." Thomp. & M. Juries, § 24. The difficulty arises in the construction and force of the last clause of section 1 of article 6, that "both male and female citizens of this state shall equally enjoy all civil, political, and religious rights and privileges." Is jury service a right or privilege? The statute now in force restricts the qualifications to male citizens able to read and write the English language, having the qualifications of electors, and being of sound mind and discretion, and not being judges or clerks of any of the courts, sheriffs, coroners, jailers, or subject to any bodily infirmity disqualifying them for service as jurors, and not having been convicted of a felony. The statute exempts persons over 60 years of age, ministers of the gospel, county officers, licensed attorneys, practicing physicians, dentists, registered pharmacists, officers and employes of the United States government, firemen and militiamen in active service. Sess. Laws Wyo. 1890, c. 35. This act was passed prior to the admission of the state into the Union, and has not been altered or repealed. No provision has been made, then, by statute, for the admission of female electors to the jury box, unless the constitution can be so construed as to confer the right without legislation. It may be that jury duty is no more a civil or political right than militia service, and that is by the terms of the constitution

restricted to able-bodied male citizens between certain ages, who have "no conscientious scruples averse to bearing arms." Const. Wyo. art. 17, § 1. It may be that jury duty is a right or privilege, that of assisting in the administration of justice, as it is put by some of the courts,—an important function of government, affecting the rights and interests of both sexes. We do not feel justified in deciding a question of such grave importance on the spur of the moment, and without a full argument. We do not find it necessary to do so in this case; for the plaintiff in error complains that, by the exclusion of women from the jury that tried him, he was not accorded the equal protection of the laws of this state, and was deprived of his rights, privileges, and immunities accorded to him under the provisions of the fourteenth amendment to the constitution of the United States. He sought to have the cause removed to the federal court for trial for this latter reason, and assigns this as error, also. He had no such right of removal, as the object of the fourteenth amendment to the federal constitution was against discrimination because of race or color, and not because of sex. "Its design was to protect an emancipated race, and to strike down all possible legal discriminations against those who belong to it." Strauder v. West Virginia, 100 U. S. 310. In this case the court said: "We do not say that within the limits from which it is not excluded by the amendment a state may not prescribe the qualifications of jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to persons within certain ages, or to persons having educational qualifications. We do not believe the fourteenth amendment was ever intended to prohibit this." This was a cause where the removal from the state to the federal court was granted. The plaintiff in error was a colored man indicted and tried for murder in the courts of the state of West Virginia, where he was convicted. He seasonably made his motion for removal of the cause to the federal court, but was refused this by the state courts. The supreme court of the United States held that he was entitled to such removal, as the statute of the state restricted jury duty to whites. Such a statute was held to be a violation of the amendment as the state law discriminated in the selection of juries against negroes, because of their color, and amounted to a denial of the equal protection of the law to a colored man put on trial for an alleged offense against the state. This decision was fortified by the later cases of Virginia v. Rives, 100 U. S. 313; Ex parte Virginia, Id. 339; Neal v. Delaware, 103 U. S. 370; Bush v. Kentucky, 107 U. S. 110, 1 Sup. Ct. Rep. 625. These cited cases held that the removal should be granted under hostile statutes. They held also that discriminations against negroes on account of color, by officers charged with the duty of selecting jurors, would be corrected on error. But there appears to be no case where a white man has asked for a removal of a cause wherein he is a party, or its reversal on error, because a statute excluded other races than his own from a jury before whom he could be or is tried, or because officials charged with the duty of selecting or summoning jurors selected or summoned those of his own race only to serve as jurors in his cause. The right has, we believe, been always demanded by the citizen whose rights, or the rights of whose race or color, were infringed or discriminated against. No statute has been declared unconstitutional, no act held unlawful, because a white man was tried by his own race or color. In the case at bar the right of removal to the federal court did not exist, because the discrimination under the federal constitution and under the federal law was prohibited as against the African race, not as against female citizens.

If the plaintiff in error can complain, it is because the constitution of this state, and not the constitution of the United States, was violated in the exclusion of female citizens from the jury that tried him. It was said in the case of Strauder v. West Virginia, supra, that the very idea of a jury is that the body of men of whom it is composed are the peers or equals of the person whose rights it is selected or summoned to determine, and that they must be of the same legal *status* in society as that which he holds. The plaintiff in error asserts a right or privilege of having members of the opposite sex, as well as those of his own sex, to determine his rights, because they are unconstitutionally excluded from enjoying a right granted to them, and not because any one of his own sex is denied the right. If women have the right, if it is a right, to serve as jurors, and to "assist in the administration of justice" thereby, it seems that no

one but a woman—one of the class or sex whose rights have been invaded—can assert that right. It must be demanded by one who has been denied the equal protection of the law, and a civil or political right or privilege of which she, in common with her sex, has been deprived. The courts will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who therefore has no interest in defeating it. Cooley, Const. Lim. 164. The supreme court of Kentucky has passed upon the question as to whether or not a white man could complain of a statutory exclusion of colored men from a grand jury that indicted him; and as the opinion is so pertinent on this point, we quote the same in extenso. "In Johnson v. Com., we held, in pursuance of authoritative decisions of the supreme court of the United States, that a state law which excluded negroes from service on grand and traverse juries would, if enforced, deprive colored persons of the equal protection of the law, and that such statute was therefore unconstitutional. We are now called upon to decide whether the statute deprives white persons of the equal protection of the law. In other words, whether a white person, indicted by a grand jury composed wholly of persons of the white race, can complain because negroes were excluded from the grand jury by which he was indicted. Only those who are prejudiced by an unconstitutional law can complain of it. Cooley, Const. Lim. 164. In Marshall v. Donovan, 10 Bush, 681, Marshall, a white person, undertook to raise the question whether the exclusion of negroes from participation in the benefits of the common-school system of the state was not a violation of the state constitution. But the court refused to consider the question because Marshall, being one of the favored race or class, could not raise it. The act of the general assembly which provided that only white persons should serve upon juries has been held to be unconstitutional because in the opinion of the supreme court the exclusion of negroes from juries on account of their race and color denied them the equal protection of the law, in contravention of the fourteenth article of amendment to the constitution of the United States. That conclusion was based on the ground that a race whose members are excluded from serving on juries is discriminated against as a race, and is not as well protected by the

law as the race not so excluded. Surely, if this be true, it cannot be true that one belonging to the race not excluded, but from which the whole jury was required to be selected, can have been prejudiced by the fact that another race was excluded." Com. v. Wright, 79 Ky. 22. See, also, Norman v. Boaz, 85 Ky. 557, 4 S. W. Rep. 316. The principle announced in these decisions governs the case before us. As a white man cannot urge as an infraction of his rights that the rights of another race have been assailed, so a member of one sex cannot complain because the members of another sex are denied the same rights as persons of his sex. The deprivation of the rights, privileges, or immunities of a class, race, or sex, which are guarantied by the organic law, can only be determined in a proceeding instituted by one of the proscribed class, race, or sex, where relief may be given directly to the oppressed one in his suit and upon his demand. A woman must be on trial to demand the rights of her sex, or to assert that they have been unjustly or unconstitutionally discriminated against. A man cannot assert her right for her in his cause. He is not the party whose rights are affected, and he has no interest in defeating an unconstitutional or invalid law, affecting those of the opposite sex. Without intimating, then, what our views might be as to the meaning and force of the constitutional provision providing that the members of both sexes should equally enjoy all civil, political, and religious rights and privileges, when such a question is fairly and properly presented; without passing in this case upon the right, duty, or eligibility of female citizens to serve as jurors, where they possess the same statutory qualifications as men; without construing the various constitutional provisions bearing directly or remotely upon the matter; without attempting to say whether the constitutional provision conferring the right or privilege, if it is so conferred, requires legislation to clothe it with force and vitality,—we decide but this, and that is sufficient: that the plaintiff in error, a man, cannot claim that any civil, political, or other right or privilege of his or of his sex is infringed, invaded, or annulled by a statute excluding members of the other sex from the jury which tried him, or which by its terms confines the selection of jurors trying him to those of his own sex. He has been tried by his peers. He has not

McKinney v. State.

been denied the equal protection of the law. He has not been discriminated against because of his sex. There was no error in the refusal of the trial court to order a removal of the cause to the federal court, or in overruling the challenge to the array, because of the fact that the jury that tried the plaintiff in error was composed exclusively of members of his own sex, or in overruling the motion in arrest of judgment based on this ground alone.

5. A motion for the continuance of the cause was made on the ground of the absence of material witnesses for the defense, and this motion was overruled by the court. Such matters rest largely in the discretion of the trial court. The facts set forth in the affidavit for continuance do not show proper diligence. The witnesses who were absent at the trial all lived in Nebraska, and subpœnas were issued for them; but when this was done, or when they were served, does not clearly appear. Various reasons were given for their absence. One, a woman, was at the bedside of a sick child; another, a man, was attending a land contest; and the cause of the absence of the others was unknown. The testimony desired was either supplied by other witnesses at the trial, or was immaterial. The material testimony was cumulative; the same facts desired to be established having been testified to by witnesses who were examined during the trial. A continuance for the testimony of absent witnesses is properly denied if substantially the same testimony as that which is absent is offered at the trial. Hooper v. State, (Tex. App.) 16 S. W. Rep. 655; Duncan v. State, Id. 753. When this motion for a continuance for the term was overruled a motion was made for a continuance for a reasonable time to enable the depositions of these absent witnesses to be taken, which was likewise denied. This is claimed as error, but no exception was taken to the ruling of the court thereon, and we will not consider this alleged error; yet the reasons here given for affirming the action of the trial court in refusing a continuance for the term may well apply to this ground of error.

6. The sentence and judgment of the court is in the following language: "It is therefore considered, ordered, and adjudged by the court that the said Kinch McKinney be imprisoned in the state penitentiary of the state of Wyoming, to wit, the Illinois state penitentiary, located at or near the city of Joliet, in the state of Illinois, and kept at hard labor, for a period of eight years." This is assigned as error on the ground that the court could not order the imprisonment of a convict at a prison located without the boundaries of the state, and beyond its territorial limits. This point was directly decided in the case of Kingen v. Kelley, 28 Pac. Rep. 36,[1] after an exhaustive argument and a thorough examination by this court. We affirm the power of a district court, in that case upheld, to sentence a convict to a prison located beyond the state, as well as to change the place of imprisonment when authorized and required to do so by law, for the reasons there given.

We were not required to look into the evidence, but we have done so, although the record of the testimony is voluminous, though imperfect, as none of the maps or drawings submitted to the jury, and which were necessary to fix the location of ranges, fences, and boundary lines, are here. The *locus* of the crime was proven circumstantially, as the cattle alleged to be stolen were found in the neighboring state of Nebraska, with mutilated brands, and having the appearance of being recently and rapidly driven for some distance. In Laramie county, Wyo., the range of the cattle, they had been guarded thereon by line riders performing the duty of examining fences located in the vicinity of the boundary line between this state and Nebraska. The object in keeping them in Wyoming and out of Nebraska appears to have been to prevent violations of the herd law of the latter state. One witness testified that cattle were seen driven from this inclosed range into Nebraska in the direction of the ranch of plaintiff in error and that of Kingen, his codefendant, before the causes were separately tried. The defense claimed that the cattle might have drifted into Nebraska, and might have been taken and were taken there, or that there was no sufficient testimony on this point to overcome the presumptions in favor of the plaintiff in error on this proposition; but there was evidence of a quarrel between McKinney and Kingen, his partner or accomplice, overheard by a witness, in the course of which Kingen complained of and to McKinney that the latter had "always the best of the deal" whenever a drive

---

[1] Ante, 566.

State v. Lamoureux.

was made from Wyoming. The evidence and all attendant circumstances show that these cattle were stolen by these parties from Laramie county, Wyo., with many others, their brands altered rather clumsily, and that these forays had been systematic, bold, and extensive. The defense as to the ownership of the cattle was but feebly asserted. The finding of the jury was not against the weight of the evidence, but is supported by abundant testimony; and if we had the power to critically inspect it we could not disturb it. The instructions fairly present the law. The cause was on trial for seven days in the court below, and every point was fully and persistently contested. The judgment of the district court of Laramie county is in all respects affirmed.

CONAWAY and MERRELL, JJ., concur.