# The People of the State of Illinois, Defendant in Error, v. Walter Krause, Plaintiff in Error.

## Gen. No. 6,070.

1. CRIMINAL LAW, § 219*—*when failure of prosecution to furnish names of witnesses harmless.* In an indictment for unlawful selling of liquor on Sunday, the refusal of the State's Attorney to furnish to defendant information as to the place of residence of witnesses indorsed on the indictment is harmless, where defendant's counsel had full opportunity through the presence of such witnesses at other trials in the same court to investigate or interview them before the taking of proofs in defendant's case began.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. CONTINUANCE, § 84*—*when affidavit for continuance on ground of absence of witness insufficient.* Where application is made for a continuance because of the absence of a material witness who is out of the State and beyond the reach or process of the court, it is necessary that the affidavit show the grounds of a reasonable expectation that the absent witness will return to the State by the next term of the court and that it deny defendant's guilt in positive terms.

3. JURY, § 47*—*when names of women properly omitted.* The names of women voters in the several towns are properly omitted by the county board in making its lists of jurors.

4. INTOXICATING LIQUORS, § 130*—*what degree of proof essential in prosecution for unlawful sale.* To convict one on an indictment for selling intoxicating liquor on Sunday, it is not sufficient that the jury find that the defense was fabricated, but before the defendant can be found guilty his guilt must be established beyond a reasonable doubt.

5. INTOXICATING LIQUORS, § 147*—*when evidence insufficient to show unlawful sale.* On an indictment for selling intoxicating liquor on Sunday, evidence examined and *held* insufficient to show that defendant was guilty of the offense charged.

Error to the County Court of Lake county; the Hon. DAVID T. SMILEY, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded. Opinion filed October 20, 1915.

E. V. ORVIS and JAMES G. WELCH, for plaintiff in error.

. R. J. DADY and E. M. RUNYARD, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Walter and Stephen Krause were jointly indicted by the grand jury of Lake county for unlawfully selling liquor on Sunday. The case was certified to the County Court for process and trial. The indictment was afterwards *nolle prossed* as to Stephen Krause. After certain preliminary matters there was a change of venue from the county judge of Lake county, and another judge took charge of and tried the case.

Defendant was convicted by a jury under the fifth,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

sixth and seventh counts of the indictment and was fined thereunder, and was ordered imprisoned to work out the fine if it was not paid, and has sued out this writ of error to review that judgment.

There was a motion for a bill of particulars and the State's Attorney filed a bill of particulars, giving the dates be would rely upon. The defendant moved for a more specific bill of particulars and this motion was denied. The affidavit for the bill of particulars stated that the affiants had endeavored to learn as much as possible about T. W. Youngs and W. F. Youngs, the only witnesses whose names were indorsed upon the back of the indictment, and that defendant was informed that they were detectives and would testify against defendant; that in fact said witnesses did not buy any intoxicating liquor of defendant; that defendant did not know where said witnesses resided and had applied to the State's Attorney for their place of residence and the State's Attorney had refused to furnish that to them. We are of opinion that the State's Attorney should have been required to furnish the defendant with the place of residence of said witnesses, so that the defendant might be able to interview said witnesses, or to investigate their character and standing, before the trial. But it appeared during the trial that prior to the trial of this case at least two other cases against saloon keepers for like offenses had been tried in the same court, and that these two witnesses had testified for the People in those cases and that the attorneys for the defendant here knew what they had testified to in those other cases and therefore knew what it was necessary for them to know about said witnesses in order to prepare for this trial. How long those trials occurred before this does not appear, but this trial began on July 3, 1914, and was then adjourned to July 7th, and the impanelment of the jury was not completed until July 7th, so that defendant's counsel had full opportunity to investigate or interview said witnesses before

the taking of proofs in this case began.   Therefore we conclude that defendant was not harmed by the failure to furnish him with the residence of those witnesses.

Defendant moved for a continuance because of the absence from the State of Charles Moore, Charles Murphy and Fred Brown, alleged to be material witnesses for defendant.   Among the dates stated in said bill of particulars were April 19, April 26 and May 3, 1914.   The affidavit stated that T. W. Youngs and W. F. Youngs would testify for the People that they purchased intoxicating liquor of the defendant on those three dates, which were Sundays, and that they entered the place of business of defendant in North Chicago on those days and bought intoxicating liquor of defendant and his bartender; that Fred Brown would testify that on Sunday, April 19, 1914, he tried to enter the place of business of defendant but the door was locked and no one was in it; that upon starting to go away, he saw T. W. Youngs in the vicinity and knew him to be a detective, and saw him go to the door of defendant's premises and try to get in, but that he was unable to get in; that he thereupon watched T. W. Youngs and W. F. Youngs and followed them from place to place in hopes of finding a place where he, Brown, could get a drink of intoxicating liquor; that he knew that said T. W. Youngs and W. F. Youngs did not enter defendant's premises on that day and did not buy intoxicating liquor from him or his employee; that Charles Murphy will testify that on Sunday, April 26, 1914, he met T. W. Youngs and W. F. Youngs in North Chicago and saw them attempt to enter defendant's place of business and observed them throughout the time they were in North Chicago and that they did not enter defendant's place of business; that Charles Moore will testify that on Sunday, May 3, 1914, he was in North Chicago and saw T. W. Youngs and W. F. Youngs endeavoring to open the door of defendant's saloon but that they failed and left the

premises, and that he, Moore, then tried the door and was unable to enter the premises; and that on a certain later date named and at a place named, in a conversation between Moore and T. W. Youngs, the latter stated to Moore that he had not been able to enter the premises of defendant on any of the Sundays, and he asked Moore to take him over the next Sunday, so that he could get a drink from defendant and others. This evidence would have been very material on the trial of this case. The affidavit further stated that the testimony of T. W. Youngs and W. F. Youngs is false and that the testimony of Moore, Murphy and Brown is true; that defendant had no other witnesses who would testify as to said facts; that these witnesses were not absent by his procurement or by the procurement of any one connected with the case; that they are at Des Moines, Iowa; that Brown and Moore would return about August 1, 1914, and Murphy about September 1, 1914. This affidavit is defective. In case of an application for a continuance because of the absence of a material witness who is out of the State and beyond the reach of the process of the court, it is necessary to show the grounds of a reasonable expectation that the absent witness will return to the State by the next term of court. *Eubanks v. People,* 41 Ill. 486; *Perteet v. People,* 70 Ill. 171; *Wilhelm v. People,* 72 Ill. 468; *Dacey v. People,* 116 Ill. 555. Defendant did not state in his affidavit that these witnesses told him that they would return by the dates named. If they did not tell this to him but to some other person, then the affidavit of that other person should have been produced. Moreover the affidavit did not deny the guilt of defendant in positive terms. We therefore conclude that it was not error to deny the continuance. Nevertheless, as the delay would only have been for about two months, we think the trial judge, in the exercise of a wise discretion, might well have postponed the trial beyond the dates named.

Defendant moved to challenge the array, which was denied, and then moved to quash the venire, which was also denied.  The grounds of these motions were that the county board, in making its list of jurors in the preceding September, pursuant to section 1 of the Jury Act (J. & A. ¶ 6831), did not take into account the women in the several towns who were voters, and did not make a list of at least one-tenth of the legal voters of each town, when the women are counted as voters. Women are not legal voters on all subjects, but have a limited right to vote.  We are of opinion that the names of women who could vote on certain subjects in the respective towns were properly omitted from consideration in making up the list.

Defendant owned a double building facing east in North Chicago.  The south half thereof was a single room used as a saloon by defendant and had a bar on the north side of the front part of that room.  It had no outside door, except the east or front door.  The north half of the building was divided into two rooms. The front room was a grocery run by Stephen Krause. The rear room we may call a storeroom.  It had a west outside door, and both the grocery and saloon goods were received through that door into that room. There was a door on the east side of that room into the grocery and a door on its south side into the saloon. Defendant had no bartender, but, if he was absent, his wife tended bar for him, and on a few occasions his brother Stephen came in and assisted.  Stephen had a hired man.  T. W. Youngs was a detective employed by the county under the direction of the State's Attorney to detect violations of the liquor laws in North Chicago.  Walter F. Youngs had never done any detective work, except on these three Sundays.  These two men testified for the State that on Sunday, April 19, 1914, they passed west along the south side of this saloon and through a gate to the rear of the building and then turned north and went in at this rear door

of the storeroom, and in that room found tables and men sitting there playing cards, with bottles standing on the tables before them, which appeared to be bottles of beer; that there was a man in attendance, who was not the defendant and whom they did not know, and they asked him for something to drink and he replied that he did not sell on Sunday, but on being requested again said he could sell them some bottled beer, and that he did bring them some bottles of beer which they paid for and drank. Walter Youngs testified that this liquor was brought from the saloon and that from where he stood in the storeroom he saw the bar. Proof by defendant and a diagram of the building showed that it was impossible for one standing in the storeroom to see the bar, and also that Stephen kept beer in his grocery and sold it on commission; and it may be that what Walter supposed to be the bar was the counter in the grocery and that the man in attendance was Stephen's hired man selling beer from the grocery and from Stephen's stock. They both swear this was at 12:15 p. m. They testified that they went into this same storeroom through the same door about four o'clock p. m. on Sunday, April 26, 1914, and saw men sitting at a table and bottles before them and bought two bottles of whisky and paid therefor, and that defendant personally served them, and that the same thing occurred again on Sunday, May 1, 1914, between eleven and twelve a. m. There is a clear numerical preponderance of evidence that on Sunday, April 19th, defendant and visitors were in his home, right back of this saloon, from ten o'clock in the morning until mid-afternoon or later; that on Sunday, April 26th, defendent left North Chicago in mid-forenoon and was in the City of Chicago at the home of a brother all that afternoon; and that on Sunday, May 3, 1914, he and several friends left North Chicago at 8:30 a. m. or 9 a. m. in an automobile with provisions and fishing tackle and spent the day some distance away at

the Des Plaines River.   The testimony for defendant sustaining these contentions was by witnesses who did not always agree in every detail.   On the other hand, it appeared by the cross-examination of the Youngs brothers that Thomas kept a memorandum of events and of these and the other saloons they visited and that they both had talked over this case from this memorandum before they testified; and after the court had improperly sustained cross-questions put by defendant's counsel to Thomas Youngs on this subject, the witness finally admitted that on the trial of a former case against another saloon keeper in North Chicago he had testified that as to the occurrences at the Krause saloon he had no independent recollection thereof, and testified concerning them at that time, not from memory but solely in reliance on notes which he had made. It is entirely clear that if the jury had found the defendant not guilty, that verdict would have been supported by the numerical preponderance of the evidence, and it is a serious question whether this case ought not to be submitted to another jury upon the facts.   In this condition of the evidence the Assistant State's Attorney, in his opening argument to the jury after the close of the evidence, told the jury, in substance, that if they believed that the witnesses for the defense were not telling the truth and if they believed the defense was manufactured, then it was their duty as good citizens and as jurors to find the defendant "not guilty" as the record reads or "guilty" as the abstract reads.   Objection was made to this statement.   That objection was sustained only to the use of the words "it is their duty."   Thereafter the same attorney said to the jury: "If you believe that the testimony on the part of this defense is not to be credited, it is your solemn duty to return a verdict of guilty against the defendant on all three counts the State has proven in this case."   This was objected to and the court was asked to instruct the jury to disregard that sentence.   The

objection was overruled and the instruction refused. It is not the law that if the defense was fabricated, the defendant should be found guilty. Before the defendant could be found guilty his guilt must be established beyond all reasonable doubt. The jury might have disbelieved the testimony of defendant and his witnesses and also discredited the testimony of the two witnesses for the People, or might not have been satisfied therefrom beyond a reasonable doubt that the defendant was guilty. By overruling the objection the jury would understand that the court approved the proposition that if the evidence of the defendant was untrue, then it was their duty to find the defendant guilty, and also that the court was satisfied that the defendant had been proven guilty on three counts of the indictment. When the state of the evidence and this ruling are considered together, we conclude that the case should be submitted to another jury.

*Reversed and remanded.*