[Crim. No. 396. Third Appellate District.—July 18, 1917.]

THE PEOPLE, Respondent, v. R. E. LENSEN, Appellant.

CRIMINAL LAW—GRAND JURY OF BOTH SEXES—INVALIDITY OF INDICTMENT.—An indictment found by a grand jury composed of eleven men and eight women was not an indictment found as prescribed by law within the meaning of section 995 of the Penal Code, prior to the statute approved May 29, 1917, by which the various sections of the Code of Civil Procedure relating to jurors were so amended as to render women competent to act both as grand jurors and trial jurors, and also to sit upon juries of inquest.

APPEAL from an order of the Superior Court of Modoc County denying a new trial. Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

Jamison & Wylie, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—The defendant is charged by indictment with having sold alcoholic liquors in violation of the statute. On his arraignment, he filed a motion to set aside the indictment upon the ground that the grand jury that found and presented the indictment was not a legal grand jury, in that it was composed of only eleven men; that is to say, it was

composed of eleven men and eight women, and that twelve men did not concur in finding the indictment.

He was tried by a jury and convicted, filed his motion for a new trial, which was overruled, and was sentenced to pay a fine of four hundred dollars. It is now specified as error: (1) That the court overruled defendant's motion to set aside the indictment; (2) that there was no evidence presented by the prosecution to the jury that the alleged beer which the defendant was charged with selling contained in excess of one per cent of alcohol.

We do not think it necessary to notice other than the first assignment of error. At the time this indictment was found, section 192 of the Code of Civil Procedure read as follows: "A grand jury is a body of men, nineteen in number, returned in pursuance of law, from the citizens of a county, or city and county, before a court of competent jurisdiction, and sworn to inquire of public offense committed or triable within the county, or city and county."

Since the first statutory enactment in 1863 defining a grand jury, the law has remained unchanged. A "jury" is defined by section 190 of the Code of Civil Procedure to consist of "a body of men."

Section 990 of the Penal Code provides that the defendant may, upon his arraignment, move to set aside the indictment, and by section 995 of the Penal Code it is provided that the indictment must be set aside by the court in which the defendant is arraigned: "(1) Where it is not found, indorsed, and presented as prescribed in this code." Unless it can be said that in the enactment of these provisions of law it was intended that women should be regarded as qualified to act as members of a grand jury, we cannot hold that an indictment presented by women or by twelve members of a grand jury, one of said twelve necessarily being a woman, would be an indictment "found" as prescribed by law.

"A jury is a body of men summoned and sworn to decide on the facts in issue at the trial." (*Hunnel* v. *State,* 86 Ind. 431, 434.)

"A jury is a body of men temporarily selected from the qualified inhabitants of a particular district, and invested with power (1) to present or indict a person for a public offense. . . . " (Ann. Codes & Stats. [Or.] 1901, par. 959; Ballinger's Ann. Codes & Stats. [Wash.] 1897, par. 4730.)

34 Cal. App.—22

"Forsyth in his History of Trial by Jury, published in 1852, says: 'The distinctive characteristic of the system is this: That the jury consists of a body of men taken from the community at large, summoned to find the truth of disputed facts.' " (*Hopkins* v. *Nashville, C. & St. L. R. R.,* 96 Tenn. 409, [32 L. R. A. 354, 34 S. W. 1029, 1031].)

"Trial by jury is by twelve free and lawful men, who are not of kin to either party, for the purpose of establishing the truth of the matter in issue." (*Smith* v. *Times Pub. Co.,* 178 Pa. St. 481, [35 L. R. A. 819, 36 Atl. 296, 297].) .

" 'Jury,' as the term is used in the clause of the Constitution providing that the right of trial by jury shall not be denied, 'means twelve competent men, who are free from all ties of consanguinity, and all other relations that would tend to make them dependent on either party. It means twelve men who are not interested in the event of a suit and who have no such bias or prejudice as would render them partial towards either party.' " (*State* v. *McClear,* 11 Nev. 39, 46.)

"The terms 'jury' and 'trial by jury' are, and for ages have been, well known in the meaning of the law. They were used at the adoption of the Constitution, and always, it is believed, before that time, and almost always since, in a single sense. A jury for the trial of a cause is a body of twelve men, described as being upright, well qualified, and lawful men, disinterested and impartial, not of kin or personal dependents of either of the parties, etc." (*Dennee* v. *McCoy,* 4 Ind. Ter. 233, 237, [69 S. W. 858, 860].)

From the earliest period in the history of the common law, juries, grand and petit, have been composed exclusively of men. In speaking of challenges to the polls which were, by Coke, reduced to four heads as mentioned by Blackstone, one of these was on account of incompetency (*propter defectum*). Mr. Blackstone said: "Under the word '*homo,*' also, though a name common to both sexes, the female is, however, excluded, *propter defectum sexus* (because not of the male sex); except when a widow feigns herself with child, in order to exclude the next heir, and a supposititious birth is suspected to be intended; then upon the writ *de ventre inspiciendo* (of inspecting pregnancy), a jury of women is to be impanelled to try the question, whether with child or not." (2 Cooley's Blackstone, 4th ed., p. 1123.) The grand assize was chosen by the sheriff's selecting four knights, who in turn selected

twelve others to serve with them, "and these, all together, form the grand assize, or great jury, which is to try the matter of right, and must now consist of sixteen jurors." (Id., p. 1115.)

Blackstone defines an indictment to be "a written accusation . . . presented upon oath by a grand jury" to consist of "twenty-four good and lawful men of the county." (Id. p. 1453.)

Mr. Justice Field, while on circuit, gave an extended charge frequently referred to as an admirable statement of the functions of a grand jury. Among other things, he said: "No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes, unless this body, consisting of not less than sixteen, nor more than twenty-three good and lawful men, selected from the body of the district, shall declare," etc. (Charge to Grand Jury, 2 Sawy. 667, [Fed. Cas. No. 18,255], cited in note, 2 Jones' Blackstone, p. 2525.)

Section 7 of the Penal Code, in defining the senses in which words are used in that code, provides that "words used in the masculine gender include the feminine and neuter," and the other codes have similar provisions. We do not think the word "men," as found in the sections above referred to, is used in its generic sense, and hence was intended to include women, as, for example, the word "horse" at common law was held to include "mare," and as held in *People* v. *Pico,* 62 Cal. 50.

"The English Representation of the People Act, 1867, giving the franchise to every man possessed of a certain qualification, did not enfranchise women. Although by the statute 13 & 14 Vict., c. 21, par. 4, it was enacted that 'in all acts, words importing the masculine gender shall be deemed and taken to include females,' the word *man,* in the ordinary and popular sense of words, is used in contradistinction to the word 'woman.' *Chorlton* v. *Lings,* L. R. 4 C. P. 374." (19 Am. & Eng. Ency. of Law, 2d ed., pp. 705, 706.)

When the statute was enacted defining the terms "jury" or "jurors," or the persons qualified to act in finding indictments, and mentioning such persons as "men," the statute carried with it the implication that they should be males, for such was then the common law that women were incompetent to act as jurors.

Mr. Justice Turner, in *Harland* v. *Territory,* 3 Wash. Ter. 131, [13 Pac. 453], held that this implication arose even where the code declared all "qualified electors" as competent to serve as grand jurors, and the code also made females of like age with males qualified electors.

The question has been removed from the field of controversy by the recent statute, approved May 29, 1917, [Stats. 1917, p. 1282], by which the various sections of the Code of Civil Procedure relating to jurors are so amended as to ren der women competent to act both as grand jurors and trial jurors, and also to sit upon juries of inquest. By section 7 of the act, it is made the duty of the superior court in each of the counties of the state, in making an order designating the estimated number of grand and trial jurors for the year, to make the selections "of men and women suitable and competent to serve as jurors," etc. The question now here must, of course, be decided with reference to the statute law heretofore existing.

The order denying defendant's motion for a new trial is reversed, with direction to grant the motion to set aside the indictment.

Burnett, J., and Hart, J., concurred.