Matter of the Application of JULIA V. GRILLI.

(Supreme Court, Kings Special Term for Motions, January, 1920.)

Mandamus — when application for a peremptory writ of, denied — when women citizens may not sit as trial jurors.

Though by the recent amendment to the State Constitution women citizens are qualified to vote, they may not sit as trial jurors until the legislature so enacts.

An application for a peremptory writ of mandamus to compel the officials having the matter in charge to include the names of women in jury lists, denied.

Supreme Court, January, 1920. [Vol. 110.

APPLICATION for a peremptory writ of mandamus.

Julia V. Grilli, in person, for motion.

William P. Burr, corporation counsel (Joseph P. Reilly, assistant corporation counsel, of counsel), opposed.

Jacob Brenner, commissioner of jurors, opposed.

LAZANSKY, J. This is an application for an order for a peremptory writ of mandamus directing the board of assessors and the commissioner of jurors to complete the jury list of the county of Kings by including therein each and every woman in said county qualified and liable for jury duty in the courts of record of the state held in and for the said county.

No question has been raised as to the right of the petitioner to institute this proceeding, nor as to the propriety of the proceedings. The question which has been raised, and which the court in this proceeding is to answer, is whether the officials having the matter in charge must include women in the jury lists?

Section 681 of the Judiciary Law provides that trial jurors must be selected by the commissioner of jurors. Section 686 provides for the qualification of jurors in Kings county as follows:

" 1. A male citizen of the United States, and a resident of that county.

" 2. Not less than twenty-one, nor more than seventy years of age.

" 3. The owner, in his own right, of real property of the value of one hundred and fifty dollars, or of personal property of the value of two hundred and fifty dollars; or the husband of a woman who is the owner, in her own right, of real or personal property of that value.

" 4. In the possession of his natural faculties; and not infirm or decrepit.

" 5. Free from all legal exceptions; intelligent; of sound mind and good character; and able to read and write the English language understandingly."

Section 691 requires the assessors, after the first day of May, and on or before the first day of July, in each year, to return to the commissioner of jurors a written list containing the names of all persons who are liable to serve as trial jurors.

The only claim made by the petitioner in connection with her application is that jury service is incidental to and a part of suffrage, and since, by the recent amendment of the State Constitution, women are qualified to vote, they must be made jurors. The fallacy of this contention is found in an examination of the history of the jury system since the adoption of the first Constitution in the state of New York. While citizenship has always been a qualification of jury service, every voter has not been included within the jury lists. The various laws with reference to jurors show that men who were entitled to vote have been excluded from jury service. By section 686, above mentioned, male citizens over the age of seventy and male citizens who do not own real property of $150 or personal property of $250, and male citizens who are infirm or decrepit, male citizens who are not intelligent, and male citizens who are not of good character, and male citizens who are not able to read and write the English language understandingly, are disqualified from jury service. Similar statutes are made applicable to other counties. These limitations include a large number of citizens who vote. Similar enactments have existed in this state for many years, clearly showing that the right to vote did not of itself carry with it the right of jury service. Residence and citizen-

ship are the primary qualifications. Even the length of residence is not prescribed. The petitioner insists that the word " jury " has always meant twelve voters, but there is not a single expression in any of the acts with reference thereto which warrants any such conclusion. For instance, she asserts that because the act of the Colonial Legislature of November 27, 1741, provided that jurors were to be selected from the freeholders, and freeholders were voters, therefore, the duty to sit as a juror followed the right to vote. It is true that law limited the right to freeholders to sit upon a jury, but that is far from meaning that, because a freeholder was a voter, he was a juror because he was such voter. It will be observed that in this very law freeholders over the age of seventy were excluded from jury service. It is also argued that the word " peers " meant those of equal political rights, that is, a right to vote, and that since a jury is to be selected from the peers of the litigants or a person on trial, that meant a jury of voters. " Peers " might mean voters yet the claim would be met by having none but voters as jurors. But this would not require the inclusion of women, even if they be voters. But the word " peers " in this country really means a citizen and nothing more. I can see absolutely no connection whatever between the right to vote and jury service to justify relator's claim. Were this the only consideration on this application there would be no difficulty whatsoever in concluding that women citizens are not entitled to serve as jurors in light of the statute. In respect of this question it has been said in *McKinney* v. *State of Wyoming*, 3 Wyo. 719; 16 L. R. A. 710, 712: " We have not much doubt that women were not eligible as jurors under the territorial statutes, as the right to vote and hold office does not include the right, if right it may be termed, to serve as a juror."

Does the enactment in question limiting jury service to male citizens violate any of the constitutional rights of the petitioner? Does this amendment violate the part of the Fourteenth Amendment to the Constitution of the United States which provides: " * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

My first impression in this connection was that jury service was not a matter of right, either civil or political, but a matter of duty which the state has the right to regulate as much as it has the right to regulate the qualifications of its officials. To some extent this view was confirmed by what was said by Mr. Justice Field in a dissenting opinion in *Ex parte Virginia,* 100 U. S. 339, 365: " But the privilege or the duty, whichever it may be called, of acting as a juror in the courts of the country, is not an incident of citizenship. Women are citizens; so are the aged above sixty, and children in their minority; yet they are not allowed in Virginia to act as jurors. Though some of these are in all respects qualified for such service, no one will pretend that their exclusion by law from the jury lists impairs their rights as citizens."

But the impression was not permitted to ripen into conclusion because of the prevailing opinions of Mr. Justice Strong in that case and in *Strauder* v. *West Virginia,* 100 U. S. 303. In the latter case in which Mr. Justice Field dissented on his opinion in the former case, it was held that a statute of West Virginia which provided *"All white male persons who are twenty-one years of age and who are citizens of this State shall be liable to serve as jurors, except as herein*

*provided,''* (the persons excepted were state officials) in effect, singled out and denied to colored citizens the right and privilege of participating in the administration of the law as jurors because of their color though qualified in all other respects, and was a brand upon them, and a discrimination against them forbidden by the amendment; it denied to such citizens the equal protection of the laws, since the constitution of juries is a very essential part of the protection which the trial by jury is intended to secure.

In *Ex parte Virginia, supra,* it was held that a county judge of Virginia, charged by the law of that state with the selection of jurors, was properly indicted under an act of Congress, passed for the enforcement of the Fourteenth Amendment, for excluding and failing to select as grand jurors and petit jurors certain citizens of his county of African race and black color who possessed all other qualifications prescribed by law.

In the course of the opinion by Mr. Justice Strong, in the *Strauder* case, it is stated, at page 310: " We do not say that within the limits from which it is not excluded by the amendment a State may not prescribe the qualifications of its jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the Fourteenth Amendment was ever intended to prohibit this. Looking at its history, it is clear it had no such purpose. Its aim was against discrimination, because of race or color.'' This holding as to race and creed has been incorporated in section 13 of our State Civil Rights Law.

In *McKinney* v. *State of Wyoming,* 3 Wyo. 719; 16 L. R. A. 710, the question of excluding women from jury service by legislative enactment was considered in the face of a constitutional provision that: " the rights of

citizens of the state of Wyoming to vote and hold office shall not be abridged or denied on account of sex. Both male and female citizens of this state shall equally enjoy all civil, political, and religious rights and privileges.'' The court while holding that the plaintiff in error could not complain because of the exclusion of females from the jury which tried him *on account of any violation of the Constitution of the United States,* refused to grant him any relief because it held a man cannot urge as an infraction of his rights under the state constitution that no woman was permitted to be on the jury sitting in judgment on him. Only a woman may complain if women are not permitted to serve at her trial.

The reference in the majority opinion in the *Strauder* case to the right of a state to limit jury service to males is purely *obiter.* It would serve no useful purpose to question the logic of that view in the face of the provisions of the Fourteenth Amendment as it was then considered or under its broadened scope. It is, however, an expression of opinion of the highest court in the land which, of course, must be highly regarded. Since the adoption of the amendment, jury service has been limited to males by statute or construction thereof in the courts of nearly all the states of the Union and in the Federal courts by virtue of an act of Congress which makes the qualifications of a juror in a state his qualifications in the United States courts sitting in that state. U. S. R. S. § 800, as amd.; Judicial Code, § 275; Fed. Stats. Anno. Supp. 1912, Vol. 1, p. 245. For over fifty years, the people generally throughout the country — surely in this state, the courts and legislatures have proceeded upon the idea that woman were not entitled as citizens to act as jurors. This long-continued and undisputed practical construction of a constitutional provision is, in effect, a direct judicial construction. More so here, because it is in accord with

Supreme Court, January, 1920.    [Vol. 110.

the expression of our highest court. *Minor* v. *Happersett,* 88 U. S. 162; *People ex rel. Williams* v. *Dayton,* 55 N. Y. 367. While the doctrine stated may be subject to abuse and a ready refuge against the assumption of responsibility, in this case the course of conduct of the Federal and state governments in limiting jury service to males has been so unvaried, thousands upon thousands of cases both civil and criminal have been tried with only male jurors with but little objection for so many years, to adopt any other course than to follow this rule of construction would be disregarding that which is practically, if not entirely, conclusive.

The question of expediency of having women serve as jurors is not within the court's province. If it were it would be readily answered in light of the marvelous development of womankind in the past decade. These considerations must be addressed to the legislature by the learned relator who has represented herself and her sex so ably in this proceeding. No other question has been raised or suggested.

Motion denied, without costs.