(October 4, 1924.)

STATE, Respondent, v. ROBERT E. KELLEY, Appellant.

[229 Pac. 659.]

CONSTITUTIONAL LAW—JURORS—QUALIFICATIONS—COMPETENCY—ELECTORS—CITIZENS.

Under the statutes of this state a female citizen of the United States, who is an elector of the county, is not legally competent to act as a juror.

APPEAL from the District Court of the Seventh Judicial District, for Valley County. Hon. B. S. Varian, Judge.

Judgment of conviction of the unlawful possession of intoxicating liquor. *Reversed* and *remanded.*

Delana & Delana, for Appellant.

A jury is a body of men. (C. S., sec. 6512.) A grand jury is a body of men. (C. S., sec. 6514.) A trial jury is a body of men. (C. S., sec. 6515.) A trial jury consists of twelve men. (C. S., sec. 6516.) A jury of inquest is a body of men. (C. S., sec. 6517.) A person is competent to act as a juror if he be in possession of his natural faculties. (C. S., sec. 6518.)

The court may, by an order entered on its minutes, direct the sheriff of the county to summon so many good and lawful men of his county to serve as jurors. (C. S., sec. 6538.)

Women are not competent to sit as jurors. (*Knollin v. Jones*, 7 Ida. 466, 63 Pac. 638; *People v. Lensen*, 34 Cal. App. 336, 167 Pac. 406; *Harper v. State* (Tex.), 234 S. W. 909; *In re Grilli*, 110 Misc. 45, 179 N. Y. Supp. 795; 96 N. J. L. 132; *State v. James*, 114 Atl. 553; *Harland v. Territory*, 3 Wash. Ter. 131, 13 Pac. 453; *People v. Krause*, 196 Ill. App. 140; *McKinney v. State*, 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710.)

A. H. Conner, Atty. Genl., and Jas. L. Boone, Assistant, for Respondent.

Women are eligible to serve as jurors in criminal cases in this state. (Art. 1, sec. 7, art. 6, sec. 2, Const. of Idaho; C. S., secs. 6518, 6519; *Parus v. District Court*, 42 Nev. 229, 4 A. L. R. 140, 174 Pac. 706; *People v. Barltz*, 212 Mich. 580, 12 A. L. R. 520, 180 N. W. 423; *Commonwealth v. Maxwell*, 271 Pa. 378, 16 A. L. R. 1134, 114 Atl. 825; *State v. Walker*, 192 Iowa, 823, 185 N. W. 619.)

Statutes passed in general terms apply to new cases that arise and to new subjects that are created from time to time

and which come within their general scope and policy. (25 R. C. L. 778; *Commonwealth v. Maxwell, supra; People v. Barltz, supra.*)

Words used in the Compiled Statutes in the masculine include the feminine. (C. S., sec. 9456.) The word "men" includes women. (*People v. Barltz, supra.*) Where the word "men" is used in sections 6512 and 6515, C. S., it is equivalent to the use of the word "jurors."

WM. E. LEE, J.—Robert Kelley was tried to a jury of twelve women on an information charging him with the unlawful possession of intoxicating liquor and was convicted. He appeals from the judgment, and has properly brought here for our determination the question whether women are eligible for jury duty.

The jury system is of ancient origin. It did not emerge fully clad, in all of its perfections, from the brain of any person, or as the work of any particular council or parliament. It was not the only system in vogue in ancient times for the determination of the issues that then arose, but it is the one system that has come down to us for the trial of issues of fact. The right to trial by jury is a heritage from the law of England; and it has been frequently said by the courts of this country that our constitutional guaranty of the right to trial by jury means a trial by a jury as it was constituted at common law. There are a number of essentials of the right to trial by jury, and we are not directly concerned with the question whether the competency of jurors is within the guaranty of the constitution or whether competency is a subject for legislative action. It is not disputed, however, that juries at common law, with the single important exception noted by Blackstone "upon the writ *de ventre inspiciendo,*" were composed entirely of men.

Our jury statutes were enacted prior to the adoption of the constitution of the state. It has been held in this state that "The guaranty of the right to trial by jury simply secures that right as it existed at the date of the adoption

of the constitution, .... " (*Christensen v. Hollingsworth*, 6 Ida. 87, 96 Am. St. 256, 53 Pac. 211; *Shields v. Johnson*, 10 Ida. 476, 79 Pac. 391.) It was said in *State v. Jutila*, 34 Ida. 595, 202 Pac. 566, that:

"This right of trial by jury means in general the right as it existed in England, at the time of the separation of the American colonies, subject to such exceptions as the legislature may have expressly made, in the exercise of the power conferred upon it by the constitution."

In these decisions, however, this court was not considering the competency of jurors, and we do not decide this case upon the authority of those decisions. Our present jury statutes were enacted in 1881, and the sections bearing upon this question for determination are: "A jury is defined as a body of men .... selected from the citizens .... " (C. S., sec. 6512) ; "A grand jury is a body of men .... returned from citizens .... " (C. S., sec. 6514) ; "A trial jury is a body of men returned from the citizens .... " (C. S., sec., 6515) ; "A trial jury consists of 12 men" (C. S., sec. 6516) ; "A jury of inquest is a body of men summoned from the citizens" (C. S., sec. 6517) ; "A person is competent to act as a juror if he be: 1. A citizen of the United States and an elector of the county .... " (C. S., sec. 6518) ; "A person is not competent to act as a juror: who .... " (C. S., sec. 6519) ; "A person is exempt from liability to act as a juror if he be .... " (naming twelve grounds for exemption) (C. S. sec. 6520).

There can be no doubt that C. S., secs. 6512 to 6517, *supra,* limit jury duty to men, and that C. S., sec. 6518, adds certain additional qualifications, the possession of which was required for jury duty. At the time of the adoption of the constitution, a jury was a body of men, males, selected from the citizens of a particular district, who were electors. And it would seem that there can be no doubt that women were not eligible for jury duty when the constitution was adopted, jury duty being confined to men and to electors.

The state contends, however, that the adoption of the suffrage amendment to the constitution (art. 6, sec. 2),

making women electors, and C. S., sec. 9456, which, among other things, provides that "Words used in the masculine gender, include the feminine . . . . " operated to make women competent for jury duty; and that by reason of the amendment and the effect upon the jury statutes of C. S., sec. 9456, the word "men," in the jury statutes, is made to read "jurors," or "persons"; so that, for instance, C. S., sec. 6512, which reads: "A jury is a body of men . . . . ," means that a jury is a body of persons. What is the effect, therefore, on the jury statutes, of the adoption of the suffrage amendment to our constitution? The title of art. 6 of the constitution, according to the enrolled copy in the office of the Secretary of State, is "Suffrage and Elections." Section 2 originally read: "Except as in this article otherwise provided, *every male* citizen . . . . who has actually resided in . . . . where *he* offers to vote . . . . is a qualified elector: . . . . " As amended in 1896, the section now reads: "Except as in this article otherwise provided, every *male* or *female* citizen . . . . who has actually resided in . . . . where *he* or *she* offers to vote . . . . is a qualified elector; . . . ." In adopting this amendment the people intended to and did amend their constitution to give female citizens the same right to vote as that possessed, under the constitution, by male citizens. The people, in adopting that amendment, were not concerned with jury duty, but with suffrage. The entire effect of the adoption of the amendment was the enfranchisement of women; it imposed no duty upon them.

Citizenship has always been a qualification for jury service, but every person possessing the qualifications of an elector has not always been included among those eligible for jury duty. The right to vote has no direct relation to jury duty. They are separate subjects. (*State* v. *Walker*, 192 Iowa, 823, 185 N. W. 619; *In re Grilli*, 110 Misc. 45, 179 N. Y. Supp. 795.) They are not treated together in either the constitution or statutes. One is a right guaranteed by the constitution, the other is a duty. While the constitution guarantees the right to trial by jury, it does not guarantee

to any person the "right" to serve on a jury. A single proposed amendment to the constitution, relating both to suffrage and to jury duty, or the right to trial by jury, could not be validly submitted to the people. (*McBee v. Brady,* 15 Ida. 761, 100 Pac. 97.) The suffrage amendment, guaranteeing to female citizens the right to vote, neither relates to nor directly affects the qualifications or competency of persons for jury duty.

The state contends that statutes, such as those pertaining to juries, couched in general terms, apply to new cases that arise and to new subjects that are created from time to time and which come within their general scope and policy. This is a general principle of statutory construction. However, no "new case" has arisen and no "new subject" has been created. The jury statutes have not been amended since they were enacted in 1881. The extension of the right of suffrage did not come within the general scope and policy of the jury statutes, for the suffrage amendment dealt with another, a distinct and a different subject. The jury statutes restrict jury duty to men—males—who are citizens and electors; the suffrage amendment increased the number of electors, but it neither related to nor affected the qualifications of jurors.

The suffrage amendment made women electors. The sections of our jury statutes, which we have quoted, show that the legislature ordained that jurors shall be men, who are citizens and electors. Women are both citizens and electors. It is true that C. S., sec. 6518, does not use the word "men," but it does use the pronoun "he," and that section as well as C. S., sec. 6519, must be read and construed with the other sections. No other construction can be given to the foregoing sections of the statutes than that men—males— were distinctly specified as the class of citizens subject to the performance of jury duty. There is no question about the intention of the legislature. At the time the jury statutes were enacted women were not electors, and women were not only excluded from jury duty because only men

were included, but women were also specifically excluded because they were not then electors.

The effect of the language contained in C. S., sec. 9456,— that words used in the masculine gender include the feminine,—upon the jury statutes, has been expressly passed upon in California, whose jury statutes were the same as ours:

"Section 7 of the Penal Code, in defining the senses in which words are used in that Code, provides that 'words used in the masculine gender include the feminine and neuter'; and the other Codes have similar provisions. We do not think the word 'men,' as found in the sections above referred to, is used in its generic sense, and hence was intended to include women, as for example, the word 'horse' at common law was held to include 'mare,' and as held in *People v. Pico,* 62 Cal. 50.

" 'The English Representation of the People Act, 1867, giving the franchise to every man possessed of a certain qualification,' did not enfranchise women. Although by the statute 13 & 14 Vict., c. 21, par. 4, it was enacted that 'in all acts, words importing the masculine gender shall be deemed and taken to include females,' the word 'man,' in the ordinary and popular sense of words, is used in contradistinction to the word 'women.' *Chorlton v. Lings,* L. R. 4 C. P. 374; 19 Am. & Eng. Ency. of Law (2d ed.), pp. 705, 706.'

"When the statute was enacted defining the terms 'jury' or 'jurors,' or the persons qualified to act in finding indictments, and mentioning such persons as 'men,' the statute carries with it the implication that they should be males, for such was then the common law that women were incompetent to act as jurors." (*People v. Lensen,* 34 Cal. App. 336, 167 Pac. 406.)

Blackstone in discussing challenges to juries, in part said:

"Under the word *'homo,'* also, though a name common to both sexes, the female is, however, excluded, *propter defectum sexus* (because not of the male sex), except when a widow feigns herself with child, in order to exclude the

next heir, and a supposititious birth is suspected to be intended; then upon the writ *de ventre inspiciendo* (of inspecting pregnancy), a jury of women is to be impaneled to try the question, whether with child or not." (2 Cooley's Blackstone, 4th ed., p. 1123.)

"The language of the *venire facias* was that they (juries) be *liber et legalis homo;* and according to Blackstone, 'under the word *homo,* though a name common to both sexes, the female, however, is excluded, *propter defectum sexus.'*" (*Harland v. Territory,* 3 Wash. Ter. 131, 13 Pac. 453.)

The common-law jury was a jury of men; and, in enacting our jury statutes in 1881, we are of the opinion, as was said in *People v. Lensen,* 34 Cal. App. 336, 167 Pac. 406, that "the statute carried with it the implication that they. [jurors] should be males." Upon the adoption of our constitution jury duty was confined to men, as contradistinguished from women. During all this time, C. S., sec. 9456, having been enacted in 1881, was in effect. It had no effect upon the jury statutes. The only new enactment was the suffrage amendment, which related to an entirely different subject. Therefore, construing our statutes together, and considering them in the light of the common law, we are constrained to hold that the word "men," in the jury statutes, means males.

We must not be understood as holding that it is not within the power of either the legislature or the people to change the jury statutes. What we hold is that the jury statutes provide that a jury is a body of men, who are citizens and electors, and these statutes have not been affected in any manner by the adoption of the women suffrage amendment.

The judicial history of this state, although not controlling, justifies this position.. Since the suffrage amendment was adopted, women have not served on juries, except possibly in a few isolated cases. For nearly thirty years the jury statutes have been construed generally, by both the trial judges and the bar, to confine jury duty to men. In all the appeals to this court our published reports disclose

that in only two cases have women been summoned for jury duty. (*Knollin & Co. v. Jones,* 7 Ida. 466, 63 Pac. 638; *State v. Cosler, ante,* p. 519, 228 Pac. 277.)

It is well to mention another consideration, which, although not controlling, has an important bearing upon the subject. The law has provided twelve grounds for exemption from jury duty. None of these grounds were intended to affect women. While, because of changed economic and social conditions, some of these grounds would now operate to exempt certain classes of women from jury service, the fact remains that there is no ground of exemption that would operate to exempt that great body of adult women, the mothers of families. When the people of this state decide that the public good demands that women should be required for jury duty, no doubt additional grounds of exemption will be provided.

The general question of the competency of women to serve on juries has been passed upon by a number of courts. The decisions are not harmonious, and no useful purpose would be served by a discussion of such decisions. These decisions, which tend to support our conclusion, are: *Harland v. Territory,* 3 Wash. Ter. 131, 13 Pac. 453, which overruled *Rosencrantz v. Washington Ter.,* 2 Wash. Ter. 267, 5 Pac. 305; *People v. Lensen,* 34 Cal. App. 336, 167 Pac. 406; *In re Grilli,* 110 Misc. 45, 179 N. Y. Supp. 795, 181 N. Y. Supp. 938; *People v. Kraus,* 196 Ill. App. 140; *People v. Gochringer,* 196 Ill. App. 472. See, also, 6 Va. Reg., N. S., 780; *McKinney v. State,* 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710; *Herfeo v. State* (Tex.), 234 S. W. 909; *Re Opinion of Justices,* 237 Mass. 591, 130 N. E. 685. See, also, notes to 4 A. L. R. 152; 12 A. L. R. 525; 16 A. L. R. 1154. The following decisions may be said to be not in entire harmony with the conclusion we have reached: *Parus v. District Court,* 42 Nev. 229, 4 A. L. R. 140, 174 Pac. 706; *People v. Barltz,* 212 Mich. 580, 12 A. L. R. 520, 180 N. W. 423; *Commonwealth v. Maxwell,* 271 Pa. 378, 16 A. L. R. 1134, 114 Atl. 825; *State v. Walker,* 192 Iowa, 823, 185 N. W. 619. A careful examination of the several jury statutes con-

strued in such cases, as they are stated in the respective opinions, however, will disclose that each of them differs, in some degree, from our own jury statutes.

Other alleged errors are specified by appellant. They will not be determined in this case for the reason that they will, in all likelihood, not result from another trial.

Judgment reversed and cause remanded for new trial.

McCarthy, C. J., and Dunn and William A. Lee, JJ., concur.

Budge, J., dissents.