## STATE v. HAINES.

1. JUROR—APPEAL.—This court cannot review findings of fact involved in a determination by the trial judge as to whether a juror, who has been examined on his *voir dire*, is indifferent or not.
2. IBID.—CHALLENGE BY STATE.—The State may challenge a juror in a trial for felony at any time before the prisoner accepts the juror, particularly where the trial judge, to whom is confided the conduct of a trial, so permits.

3. CRIMINAL LAW—WAIVER.—Where a prisoner is removed from the court room to the jail when the jury retire to their room, and his presence at the rendition of the verdict dispensed with, under the directions of the judge at the special request of the prisoner's counsel, the prisoner's presence in the court room meantime, when the jury ask to have portions of the testimony read to them, is included in the intended waiver.

4. CRIMINAL LAW—PRESENCE OF ACCUSED.—A prisoner, under charge of felony, is entitled to be present at every step in his trial, original in its nature, but his presence is not necessary where portions of the testimony are read to the jury at their request, unaccompanied by any comments or instructions from the judge.

5. READING TESTIMONY TO JURY.—Where a jury returned to the court room with the request that a designated portion of the testimony be read over to them, the trial judge did not err in refusing defendant's request to have it all read.

6. REFUSAL OF NEW TRIAL—APPEAL.—This court has no jurisdiction to review an order of the Circuit Judge in a law case refusing to grant a new trial on questions of fact. And his failure to state the grounds upon which he based such refusal is not error.

Before ALDRICH, J., Richland, October, 1891.

Indictment against Wade Haines for the murder of Florence Hornsby on November 1, 1890. The opinion states the case.

*Messrs. Allen J. Green* and *Douglass & Obear*, for appellant.

*Mr. Nelson*, solicitor, contra.

June 28, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. Wade Haines, on his trial for the murder of Miss Florence Hornsby, before his honor, Judge Aldrich, and a jury, at the April term, 1891, of the Court of General Sessions for Richland County, was found guilty, and after judgment was pronounced against him, appealed therefrom. His grounds of appeal are as follows :

1. Because the juror Duffie, on his *voir dire*, showed himself competent to serve, and his honor erred in requiring him to stand aside.

2. Because his honor erred in allowing the State to challenge peremptorily the juror Parrant, the State having waived its right

by the action of the solicitor in taking his seat, and the juror having been presented to the prisoner by the clerk, in obedience to the signal from the solicitor that he was satisfied. It is submitted that it is too late for the State to challenge after the clerk has presented the juror to the prisoner.

3. Because, after the jury had been out all night, his honor, in the absence of the accused, had the jury brought into court and portions of the testimony taken on the trial read to the jury; and it is submitted that even had the accused been present his honor further erred in refusing the request of defendant's counsel to have the whole of the testimony read.

4. Because his honor erred in refusing the motion for a new trial: *A.* In that the verdict was contrary to his honor's charge, in this—(1) because the circumstances, as proved by the State, are consistent with a reasonable hypothesis of the innocence of the accused. (2) Because the circumstances do not unequivocally point to the guilt of the accused. *B.* Because, as a matter of law, under his honor's charge, the evidence was not sufficient to support the verdict. *C.* Because his honor erred in holding that upon a motion for a new trial upon the minutes of the court, that he was bound by the finding of the jury upon the facts; whereas, it is submitted, that the rule is, that while in the first instance (on the trial) the jury alone are the judges of the facts, and the court is prohibited from even intimating to them his opinion on the facts, yet when the jury has rendered its verdict and a motion for a new trial is made, it then becomes the duty of the judge to determine from the whole testimony whether. in his opinion, upon that testimony, the verdict should stand. The prisoner is entitled to hear the judge's opinion on the sufficiency of the evidence, under the rules of law, to support the verdict.

We will now examine the grounds of appeal in the order suggested by the appellant.

I. When the juror, W. K. Duffie, was presented to the court, an application was made for his examination upon his *voir dire.* The "Case" discloses the following questions and answers:

1 Q. "Have you formed or expressed an opinion as to the guilt or innocence of this defendant?" A. "Yes, sir."

Q. "Is that opinion so fixed, of such a character, that it would

prevent you reaching a proper conclusion, according to the evidence, if you should hear it ?" A. "I would try not to let it; I don't know whether it would or not." Q. "When you say you have formed and expressed an opinion, what do you mean ?" A. "The case was in the papers—the whole trial of the case was in the papers last year when tried in court here. I read it and formed my opinion from that trial." Q. "Do you feel, after reading the papers and forming such an opinion as you have formed from reading them, that it would control you in reaching a verdict, or could you reach a verdict without prejudice and without favor, according to the evidence as you hear it in the court house ?" A. "*I hope I could ; I would not say for certain ; I think that would have some influence on my opinion.*" Q. "Do you feel that, in the trial of this case, you could render a verdict according to the evidence you heard in the court house, irrespective of what you knew, or supposed you knew, from the former trial ?" A. "I would try my best to do it; of course I would." Q. "Do you feel that you could render such a verdict ?" A. "I think I could do it—yes." The presiding judge ordered the juror to stand aside in these words : "I don't want to put a doubtful juror on. If he is not certain he can come up to the full measure, he had better stand aside."

Was this error in the trial judge ? Section 2261 of the General Statutes of this State governs in these matters. By a reference to its provisions it will be seen that, "If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called." At this moment we cannot recall another instance of a statutory provision relating to the trial of causes such as that now under consideration, that has been passed upon so frequently by this court, and that, too, with such distinctness. We have held in every case that this matter is confided by the law to the decision of the Circuit Judge, whose decision thereon, so long as it relates to a question of fact, will not be reviewed by this court. *State* v. *Dodson*, 16 S. C., 453 ; *State* v. *Coleman*, 20 *Id.*, 444 ; *State* v. *Nance*, 25 *Id.*, 171 ; *State* v. *Prater*, 26 *Id.*, 198 ; *State* v. *Williams*, 31 *Id.*, 257 ; *State* v. *Wise*, 32 *Id.*, 45 ;

*State* v. *Merriman,* 34 *Id.*, 33. This ground of appeal, therefore, is dismissed.

II. The second question raised by appellant involves the practice in the Courts of General Sessions in this State so far as fixing the period, in the ceremony of presenting a juror to the prisoner, beyond which a prosecuting officer cannot exercise the right of peremptory challenge to a juror. There is no statutory regulation governing this matter. It belongs to that class of cases where the practice long established in this State may be said to furnish the rule. Really, it would seem, from the nature of the case, that any period preceding the announcement by the prisoner of his acceptance of the juror is made, should be sufficient; for if the prisoner is once allowed to announce his acceptance of the juror by saying to the clerk, "Swear him," the right of challenge by the State is precluded. Therefore the rejection of the juror by the State's attorney must occur at some time before the prisoner announces his conclusion. The quotation from Miller's Compilation, as made in appellant's argument, sets forth the form adopted in our courts. "The clerk of court to the juror: Lay thy hand on the book. (Here a short pause for the solicitor to decide as to the juror). Juror, look on the prisoner. Prisoner look on the juror. What sayest thou?" If no objection, prisoner says, "Swear him."

No doubt the better practice is for the State's attorney to speak promptly after the clerk uses the words, "Lay thy hand on the book;" but where is there any imperative necessity on the State's attorney to signify his objection at that precise moment? The prisoner is not imperilled by such delay. Indeed, there is no reason why the State's attorney should speak until it is made the duty and right of the prisoner to speak. In the practice as it obtains at the bar in this State, the State's attorney is allowed time to speak until the prisoner has spoken. Surely any other conclusion than that we have here announced would be the barest technicality. Then, again, as the control of the practical incidents of a trial in the Circuit Court are wisely confided to the Circuit Judge, and as the Circuit Judge authorized and sanctioned the conduct of this prosecution in the matter here com-

plained of, we feel bound to sustain this action of the Circuit Judge.    This ground of appeal is dismissed.

III.  The third ground of appeal here presented requires very careful consideration at our hands, for while it belongs to the class known as legal technicalities, yet the seriousness and ability of counsel in its presentation to this court demand at our hands more than ordinary care.    Just after the charge of the judge to the jury had been concluded, and the jury had retired to their room to make up their verdict, prisoner's attorney requested the judge presiding to allow the sheriff to carry the prisoner back to the county jail, not again to appear in the court room until after the verdict had been announced. The solicitor did not object.    The presiding judge acceded to the prisoner's request, and the prisoner was removed to the county jail, and was not again brought into court until sentence was pronounced upon him.    The jury remained in consultation until the next day at 1 o'clock in the afternoon.    During his absence from the court room the jury came into court and requested the presiding judge, in the presence of the solicitor and prisoner's counsel, to have read in their hearing the testimony of four witnesses for the State.    This was done, the stenographer reading such testimony, and this was done without objection on the part of prisoner's counsel.    The question is now raised by appellant, that such procedure was in violation of the legal rights of the prisoner, and that such error vitiates the trial.

It is but just to the Circuit Judge that his report on this matter should be here presented.    He reports : "After the jury had been charged and retired, Mr. Douglass, in open court, the prisoner present, asked the permission of the court to allow the prisoner to be carried back to the jail ; that he be allowed to remain there, and that he should not be brought when the verdict should be rendered.    The solicitor consented.    The judge said, 'I am willing,' and the prisoner was taken to jail.    When the jury came into court to have certain testimony read over, the counsel for the prisoner were present, and did not call the attention of the court to the fact that the prisoner was absent.    Counsel did not in any manner indicate that they desired the presence of the prisoner, or that the prisoner's request through his

counsel to be allowed to return to and remain in jail, did not refer to or include the reading of the testimony to the jury. It is due to myself, as the judge of the court, to say that prior to the trial of this case, I had heard that the prisoner had been removed for safe keeping from the jail of Richland County to the penitentiary. I signed an order to bring him from the penitentiary to stand his trial. I noticed that the sheriff was taking great and extra precaution to guard the prisoner; that, in addition to the number of constables, several policemen kept near the prisoner. I cannot remember the language used by Mr. Douglass when he asked permission for the prisoner to be carried back to jail, because he also spoke of the subject at another time. The impression he produced upon my mind was that he was very confident of a verdict of 'not guilty,' and that he greatly feared that upon the rendition of the verdict the prisoner would be killed, or seriously injured, as soon as he left the court house, or as soon as the court adjourned. After hearing the statement of the counsel, I did not care to refuse the appeal of the humble prisoner, if he believed what his counsel stated. I wanted to relieve him from the agony of his suspense. I did not for an instant apprehend any violence to the prisoner in court, and all that I knew of the apprehended violence out of court was learned from his counsel. Under these circumstances, it is but natural to say that the exception of the defendant's counsel, that the prisoner was not in court when the testimony was read, etc., is, indeed, a surprise to the court." After the evidence was read, the court made no charge or remark to the jury, except, "Return to your room."

It may be well to say just here that the high character of the counsel for the prisoner forbids any impression that they sought or intended any advantage of the liberality of the court to their client; they have been appointed by the court to defend the prisoner, and are actuated by a noble purpose to discharge their full-duty to their client, in all that they have done, or sought to do, in the premises. Still, we must be permitted to say that the Circuit Judge properly considered the whole to include all its parts—in other words, that when the prisoner, through his counsel, sought permission, after the jury had retired to make up their verdict, to

be carried to jail, and not to be brought in court when their verdict should be announced, this included a request to be absent from the court room during all that time, and a waiver of any right to be present during all that time. The serious question is not, however, what was meant by the counsel or the prisoner in and by their application to be absent, but was it legal to have testimony read over to the jury in the absence of the prisoner?

The Constitution of our State guarantees (and all courts are bound thereunder) to every prisoner the right "to produce all proofs that may be favorable to him, *to meet the witnesses against him face to face,* to have a speedy and public trial by an impartial jury, and to be fully heard in his defence by himself or by his counsel, or by both, as he may elect." Have not all these safeguards of the Constitution been fully accorded to the appellant? It seems to us fully. All the proofs he desired he has adduced. The witnesses against him were all sworn and fully examined in his presence—"face to face." He has had a speedy trial by an impartial jury. The prisoner has been fully heard by his counsel. This being so, has the prisoner been denied any rights secured to him by any other law? We are constrained to say that he has not. We would be rightly understood in passing upon this matter. Unquestionably, it is the law that a prisoner on trial for crime, except misdemeanors, shall be present at his trial. No step, original in its nature, should occur in the prisoner's absence from the court room. No juror can be sworn in his absence. No witness can testify in his absence. No new charge from the judge can be given. No step, in fact, *which is original in its character.* But after the jury have been empanelled, after the testimony has been fully given, after the arguments of counsel are heard, after the judge has charged the jury, and after the jury have retired to make up their verdict—after all these things, if the jury should desire the testimony, or any part thereof, read from the stenographer's notes, or even to have the stenographer to read from his notes the judge's charge, and this should occur in the absence of the prisoner from the court room, it not being original in its character, *but merely a repetition of what was original in its character when offered,* cannot operate to

vitiate the trial. It would, in point of fact, be no more than if copies of these matters were given to them, at their request, before retiring to the jury room in the first instance, and *read by the jury there.*

But it is complained that the Circuit Judge declined the request of prisoner's counsel to have the whole testimony read to the jury. No such request came from the jury. The judge did not consider it necessary. It was in his discretion. We see no error. Let this ground of appeal be dismissed.

IV. Inasmuch as the fourth ground of appeal alleges error in the refusal of the Circuit Judge to grant a new trial, we deem it proper to reproduce just here the language used by the Circuit Judge in such refusal :

"In the case of the State against Wade Haines, who was tried, and against whom the jury found a verdict of guilty of murder, the counsel have seen fit to make a motion for a new trial upon the judge's minutes, I presume, but I have considered it as a motion for a new trial generally, made in pursuance of the law which allows the judge to grant new trials in cases which have heretofore been recognized as calling for the exercise of that power by the court. I recognize fully that it is the privilege of the defendant, or his counsel on his behalf, to make this motion; and I realize that it is not only proper, but it is the imperative duty of the court to pass upon that motion.

"It is stated that the jury here have violated the instructions of the court, in that they have found a verdict contrary to the charge; and, as supporting that proposition, the line of argument and facts stated resolve themselnes into this : that the evidence was not sufficient to support the verdict ; that this case depended upon circumstantial evidence, and that the evidence did not preclude any reasonable hypothesis consistent with the innocence of the defendant. The second is, that while not exactly an *alibi,* but in the nature of an *alibi,* that it was impracticable, if not almost impossible, that the defendant could have committed the offence in the time fixed by the testimony and the surrounding circumstances. It is comparatively an easy matter for a judge to determine a question of this kind when there is

absolutely no testimony ; when testimony that is relevant is be-
fore a jury which goes in support of the allegations, there the
duty is imposed upon the judge becomes hard, that is, it is more
difficult.    Under our law the juries are the triers of the facts in
a cause.    The jury in this case was a very intelligent jury ; I
was struck with that, and I was struck with the close and earnest
attention that the jury gave to the testimony ; I was struck with
the pertinency of the questions asked by one or two of the jurors.
They went out and remained out a night and a greater part of a
day, showing that they were giving to this case a most earnest
and careful, painstaking consideration, and they came into court,
and, by request, the stenographer read his notes over to the jury,
and they retired to their room to consider further.    To my
mind that is conclusive that this jury was not carried away by
any sudden impulse; but it is proof to my mind that the jury
acted deliberately, and gave the matter their most careful atten-
tion.

"In addition to that, in the organization of the jury, at the re-
quest of the defendant's counsel, I examined every juror upon his
*voir dire*, and if I was doubtful about it, I solved the doubt in favor
of the defendant, and required the juror to stand aside.    So
that, in the organization of the jury, and in the manner in which
the jury considered this case, there is no room to suspect that
they have proven intentionally derelict or careless in the discharge
of their duties.    They are the triers of the facts.    When a mo-
tion is made for a new trial, it is addressed to the judicial discre-
tion of the judge; it is not addressed to his whim or his fancy,
but it is addressed to his conscience and his knowledge, and that
conscience and that knowledge must be controlled by the ordi-
nary rules which control judicial proceedings.

"Now, the first proposition is, that this verdict is against the
overwhelming weight of the testimony.    I cannot see that.    The
testimony was before the jury, and, at most, the only discrepancy
was between certain witnesses, and the jury heard that.    The
same as to the *alibi ;* they heard that.    It was a question of fact.
It is easy to theorize that possibly this verdict may be wrong ;
but the State, in making out its case before a jury, is required to
prove it beyond a reasonable doubt.    That jury have found a ver-

33—36

dict of guilty. Now, the motion before me is, that the verdict is against the overwhelming weight of the testimony; therefore I should be able, acting judicially, to say wherein that verdict was not warranted by the evidence. After the most painstaking consideration, studying this case as carefully as I could, looking at the authorities as well, and thinking over all the facts, I cannot say that this is against the weight of the testimony. Having that view, in my judicial discretion, I must refuse the motion. It is so ordered."

· It is settled by several decisions of this court that on appeal from the refusal of a Circuit Judge to grant a new trial on questions of fact, no relief can be afforded here. State v. Cardozo, 11 S. C., 195; State v. Clark, 15 Id., 407; State v. Tarrant, 24 Id., 593. In the case last cited, Chief Justice McIver said: "If the motion was based upon matters of fact only, this court has no jurisdiction to review his judgment."

But the appellant seeks to avoid these decisions by alleging that in one phase of their motion for a new trial, as urged before the Circuit Judge, a question of law was presented, and that on that matter the Circuit Judge erred, generally, in overruling the same, and, specially, because the appellant was entitled to his reasons or opinion for such refusal. In the case of State v. Tarrant, 24 S. C., 593, it was distinctly decided by this court that it was not error in the Circuit Judge when he failed to assign his reasons for refusing the motion for a new trial. It was stated in that case: "If the motion was based upon propositions of law, this court would assume that he had overruled them, and his ruling would be reviewable here." After a careful examination of the different phases of this ground of appeal, as presented by the appellant, we are unable to perceive any error in the action of the Circuit Judge. His clear and calm statement preceding his order refusing the order for a new trial shows that he considered all these matters and leaves no doubt with us that he was perfectly satisfied with the .findings of fact by the jury, and also that in reaching such findings of fact the jury had duly regarded his instructions on the law that was to govern them in their consideration of the facts. The original charge of the judge to the

jury must have been all that the defendant could wish, because no complaint is made thereof.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, and that the case be remanded to the Court of General Sessions for Richland County, in order that a new day may be assigned for the execution of the sentence heretofore imposed.