As a further defense to the action the defendant relied upon a written release signed by the plaintiff, dated December 18, 1894.
To which the plaintiff replied, that if he ever signed such (2) paper there was no consideration, and that his signature to same was obtained by deceit and fraud, and that the same is not valid. An issue relating thereto, was submitted to the jury as follows:
4. Is the paper writing dated December 18, 1894, relied on by defendants as a release or accord and satisfaction, the contract of plaintiff?
The following testimony bearing on the fourth issue was offered: *Page 2 
J. W. Wright, the plaintiff, testified: (Receipt is shown to the witness, marked Exhibit 1.) This is my signature; I did not know what it was when I signed it. (Statement of account, marked Exhibit 2, is shown witness. He says he has seen this paper or one like it.) I never read the receipt until I came back from Arkansas. I never looked over the account. Mr. Missel had been keeping my money and my account with the company, and I considered him honest, and I had great confidence in him, and I signed the paper that he brought. He brought some money and gave it to me, but I did not count it. When I came back from Arkansas, in consequence of a conversation I had with Grant, I went to Missel and asked to see the receipt, Exhibit 1, and he showed it to me. I don't remember what I said to him, except that I told him that I did not know I was signing a release.
Plaintiff rests.
Defendants offered in evidence Exhibit 1, which is in the following words and figures, to-wit:
$62.67. GUMBERRY, N.C. December 18, 1894.
Received of the Northampton and Hertford Railroad Company, through the hands of F. Kell, as per his statement rendered, sixty-two and 67-100 dollars, in full of any and all claims to date, including (3) the sustaining of injury received by accident October 26, 1894, by the breakage of leg, they agreeing to pay Dr. A. J. Ellis at their own cost the amount of his medical service rendered.
J. W. WRIGHT, JR.
Defendants then offered in evidence Exhibit 2, which is in the following words and figures, to-wit:
18 December, 1894.
MR. JOHN.W. WRIGHT, In account with F. KELL.
DR. CR. Nov. 1. By balance due you per acct., rendered........... $ 18.87 10. To cash paid Eugene Samuels...................... $6.00 24. By 8 days checked off McArthur's time............ 6.00 To mdse. from store.............................. 1.83 23. To cash, Wm. $1; cash, Chesly 10 cents; cash, Geo., $2.50 .................................. 3.60 Dec. 4. To cash, Dr. Green $5; cash, license $3; cash, crutches $2................................... 10.00 6. To cash sent you by Friday $1; cash, W. D. Smith $1...................................... 2.00 To cash, dispatch 75.; cash, pass Brooks 75 cents ........................................ 1.50 14. To ladies' shoes and postage $2.20; 17 tels. and for W. W. W. 50 cents......................... 2.70 17. To cash, Spivey ................................. .85 *Page 3 
Dec. 18. To board, Mrs. Joyner of wife 15 days........... $6.00 By 25 days in Nov. on acct. N. H. R. R. By 15 days in December. By 40 days $50 ................................. 76.92 By erroneously charged crutch $2; paid Friday $2.50 ........................................ $ 4.50 To mdse. from store.............................. 9.14 To cash handed you in full to date of any and all claims, including the sustaining of injury received 62.67 _______ _______ $106.29 $106.29
 F. KELL, P. M. JR.
Phil Missel, Jr., a witness for defendants, testifies: On the (4) day that Wright went to Arkansas, about two months after the accident, I went in his room. He asked me what the railroad company was going to do about paying him. I told him that I did not know. He said that he ought to have pay for his time and have his doctor's bill paid. I told him I thought so too, and that I would see Mr. Kell for him, and see what he would do. I went and saw Kell, and he said that he would stay there, in order that his physician might he got well, if he would stay there, in order that his physician might attend him, but if he would not do so, that he would pay him up to the present time and pay Dr. Ellis, and leave the rest to Messrs. Clark and Shephard (the president of the defendant companies). I went back to see Wright, and finding company in his room, called him out and told him what Kell offered to do, and Wright agreed to accept Kell's offer. I then went back to my office and made out Wright's account, and then went back to Wright's room and paid him the money due him, and gave him a statement of his account, of which this (Exhibit 2) is a copy, and read the receipt (Exhibit 1) to him, and he signed the receipt and gave it back to me. He kept the money and statement of account. He said that he was going to Arkansas to see his mother. He had walked around on crutches before this time. I next saw Wright when he returned from Arkansas. He asked to see the receipt, and I showed it to him. He said that he did not know that it read that way. I made no reply. He afterwards asked me about the propriety of his staying with Kell, if he would look like an object of charity? I told him no, that I thought it was due him from Kell. I told him that I would have to swear, if I was put on the witness stand, that I read the receipt to him, and that he had said nothing. I was Kell's bookkeeper and secretary, and bookkeeper for the G. and J. R. R. and L. Co., and secretary and treasurer of No. and H. R. R. Co. The two companies had no connection in a sense except a money transaction. I (5) *Page 4 
am now in the lumber company business. I am secretary of a lumber company not connected with the defendants. I live in Richmond, Va., and came here to testify. Kell paid Wright's board and doctor's bill.
Defendants close.
Mrs. Wright, wife of plaintiff, testifies: I am a niece of Mrs. Kell's. Missel came twice on the day that Wright signed the receipt. Wright was on the bed. Neither paper was read to Wright. Missel told Wright there was an itemized statement of your account and a receipt, and gave him the money and statement of the account, and I put them away without counting the money. Missel had in the evening called Wright out, and talked to him about a sleeper, and I went and settled the matter about the sleeper. Receipt was not read to Wright.
Dr. A. J. Ellis testified: Kell paid Wright's doctor's bill.
At the close of the evidence, the defendants moved the court to dismiss the action upon the ground that there was no evidence to go to the jury showing fraud in the execution of the receipt (Exhibit 1).
Motion overruled, and defendants excepted.
His Honor charged the jury on the 4th issue as follows: "If the jury find that the plaintiff signed the receipt (Exhibit 1) for the purposes therein set forth without any fraud or misrepresentation on the part of the defendants, or their agent, Missel, then they should answer the fourth issue, Yes."
Defendant excepted.
(6) His Honor further charged the jury on the 4th issue: "If the jury should find that the plaintiff was induced to sign the paper by the fraud of the defendant's agent, Missel, and the plaintiff did not know the contents of the paper when he signed it, and he had no opportunity to ascertain its contents, and could not by reasonable diligence have learned what the paper was, then the jury should answer the first issue, No."
Defendants excepted.
At request of plaintiff, his Honor further charged the jury: "If the jury find from the evidence that plaintiff had great confidence in the witness, Missel, and had trusted him to keep his money and his accounts with the defendant company, and further that said Missel told him that the paper dated December 18, 1894, was a receipt for his wages up to date, and that he signed said receipt without reading it, trusting in what Missel had told him, then the plaintiff would not be estopped thereby, and the fourth issue should be answered, No."
Defendants excepted.
The jury responded to the 4th issue, No, and assessed the plaintiff's damages at $1,000, less $142.92, leaving $857.08, and his Honor rendered *Page 5 
judgment in favor of plaintiff for $857.08, from which judgment the defendant appealed to Supreme Court.
This action was commenced for the recovery of damages for an injury to the person of the plaintiff caused by the alleged negligence of the defendant company; and the jury found all the issues favorably to the plaintiff. (7)
One of the defenses set up in the answer was the release of the defendant and the satisfaction of the plaintiff's claim. The plaintiff filed a replication to that defense and averred that the paper writing which contained the release was procured through the fraud of the defendant. Upon that phase of the case the fourth issue: "Is the paper writing dated December 18, 1894, relied on by defendants as a release or accord and satisfaction, the contract of plaintiff?" was submitted to the jury. The defendant's appeal contains exceptions only to the charge of his Honor on that issue. The Court's instruction was this: "If the jury find that the plaintiff signed the receipt (Exhibit 1) for the purposes therein set forth without any fraud or misrepresentations on the part of the defendants or their agent, Missel, that they should answer the fourth issue, Yes." Upon a most careful examination of the whole evidence we fail to find a scintilla as to any fraudulent conduct on the part of Missel, the agent of the defendant company. The plaintiff himself as a witness did not make any charge or intimation that Missel practiced any deceit or fraud upon him in the execution of the release, or in its consideration. It is true he said that he did not know what the paper was when he signed it, that Mr. Missel had been keeping his money and his account with the defendant, that he had great confidence in Missel, that Missel brought the paper to him to sign and he signed it, but he did not testify that the paper writing did not contain the contract and agreement between him and the company, or that he wished even then to repudiate it. Nor did the plaintiff testify that he was not informed of the agreement and release set out in the paper writing before he executed it. Missel testified that the terms of the settlement were fully gone into between him and the plaintiff just immediately before the plaintiff signed the receipt, and the plaintiff did not contradict the statement. The testimony of (8) the plaintiff's wife added nothing to the strength of his case. She said that Missel brought the account and receipt to the plaintiff, saying, "There was an itemized statement of your account and a receipt, and gave him the money and statement of the account." And she said *Page 6 
further that neither paper was read by the plaintiff. But certainly on the face of that statement there was no fraud on the part of Missel, and nothing tending to show that the plaintiff had not been informed by Missel of the contents of the paper writing before he signed it.
The instruction of his Honor was erroneous, for there was no evidence tending to prove fraud on the part of the defendant in the execution of the release.
New trial.
Cited: Jeffreys v. R. R., 127 N.C. 383; Boutten v. R. R., 128 N.C. 342.