STATE v. MITTLE

(113 S. E. 335)

1. ELECTIONS—NINETEENTH AMENDMENT TO FEDERAL CONSTITUTION DOES NOT CONFER RIGHT OF SUFFRAGE ON WOMEN.—Const. U. S. Amend. 19, providing that the right to vote shall not be denied on account of sex, does not itself confer the right of suffrage upon women, but merely prohibits discrimination, leaving the States to confer the right.

2. JURY—GRANT OF RIGHT OF SUFFRAGE TO WOMEN DOES NOT CONFER RIGHT TO DO JURY DUTY.—Even if Const. U. S. Amend. 19, granted the right of suffrage to women, it did not thereby give them the right to serve as jurors.

3. JURY—WOMEN ARE NOT QUALIFIED JURORS UNDER THE STATE CONSTITUTION.—Under Const. art. 5, § 22, providing that the petit jury of the criminal courts shall consist of 12 men, women are not permitted to serve as jurors, notwithstanding the further provision that each juror shall be a qualified elector, which does not mean that every qualified elector shall be a qualified juror.

4. CONSTITUTIONAL LAW—ACCUSED CANNOT RAISE QUESTION EXCLUSION OF WOMEN FROM JURY SERVICES VIOLATED FOURTEENTH AMENDMENT.—Defendant in a criminal case cannot raise the question that the exclusion of women from jury duty violated Const. U. S. Amend. 14, since he is not a member of the alleged excluded class.

5. CRIMINAL LAW—EXCEPTIONS NOT ARGUED WILL NOT BE CONSIDERED.—An exception to the refusal to quash a venire will not be considered where it is not discussed in argument.

6 JURY—PAYMENT OF TAXES IS NOT NECESSARY TO ENTITLE PERSON TO SERVE AS JUROR.—Under Const. art. 5, § 22, requiring each juror to be a qualified elector, it was not necessary that the juror should have paid taxes during the current year, which is an essential to his right to vote at any particular election, but not essential to his being a qualified elector registered as such, and who may vote at any election upon a showing he has paid his taxes at any time before the election.

Note: Conferring right of suffrage upon women as qualifying them to serve as jurors, see notes in 12 A. L. R., 525; 16 A. L. R., 1154.

7. ELECTIONS—REGISTRATION IS ESSENTIAL TO QUALIFY AS ELECTOR.—Under Const. art. 2, § 2, describing who are qualified electors, registration is an essential element to constitute one a qualified elector.

8. CRIMINAL LAW—INDIFFERENCE OF JUROR IS QUESTION FOR TRIAL COURT'S DISCRETION.—The matter of the indifference of a juror is a question for the discretion of the presiding Judge.

9. JURY—OPINION OF JUROR HELD NOT TO DISQUALIFY HIM.—A Juror who admitted he had formed, from what he had heard and read an opinion, but that, if selected as a juror; he would absolutely leave that impression behind, and be governed solely by the testimony, was not disqualified to serve, though during a long and tedious examination he made statements in reference to the testimony necessary to efface his impression, largely in the words of examining counsel, which, taken alone, might disqualify him.

10. CRIMINAL LAW—INDIFFERENCE OF JUROR IS NOT REVIEWABLE EXCEPT FOR WANT OF ANY EVIDENCE.—Whether a juror is indifferent in the cause is a question of fact which is not reviewable in the Supreme Court, unless perhaps it should appear that the conclusion of the Circuit Court is wholly without any evidence to support it.

11. CRIMINAL LAW—EXCEPTION POINTING OUT NO SPECIFIC ERROR IN ADMITTING TESTIMONY NEED NOT BE CONSIDERED.—An exception to the admission of testimony need not be considered where the exception points out no specific error.

12. CRIMINAL LAW—ADMISSION OF TESTIMONY NOT OBJECTED TO CANNOT BE MADE GROUND OF EXCEPTION.—The admission of testimony cannot be made the ground of exception where no objection was made to the testimony.

13. CRIMINAL LAW—RECORD HELD NOT TO SUSTAIN EXCEPTION TO ADMISSION IN EVIDENCE OF CONVERSATION.—An exception assigning error in not excluding the testimony of a witness as to a conversation overheard by her between her father and defendant cannot be sustained where the record shows that the answer of the witness was interrupted by objection and a lengthy colloquy, and that she did not detail any conversation between the parties except that her father ordered defendant off the place.

14. CRIMINAL LAW—CHARGE ON CIRCUMSTANTIAL EVIDENCE HELD CURED BY VERDICT.—Error in a charge on circumstantial evidence which was on the weight of the evidence was cured by the verdict where the circumstantial evidence merely tended to show that defendant had lain in wait for deceased, and the jury found defendant guilty only of manslaughter, which involved a finding against such evidence.

15. CRIMINAL LAW—REQUESTED CHARGE TO CURE STATEMENT OF STATE'S COUNSEL HELD COVERED.—A requested charge that the jury could not try the question of the relations between defendant and a woman concerning whom the difficulty arose, but could only pass on the question whether defendant could be convicted of murder of deceased or be acquitted under his plea of self-defense, was sufficiently covered by the charge that the jury were not trying for bigamy or unlawful marriage, but only for murder.

Before BOWMAN, J., Orangeburg, May, 1921. Affirmed.

Edward N. Mittle upon conviction of manslaughter appeals.

*Messrs. Wolfe & Berry, Cole L. Blease, Thos. M. Raysor* and *E. C. Mann,* for appellant, cite: *Juror must be qualified elector:* Const. 1895, Art. V., Sec. 22; Art. II, Sec. 4; 55 S. C. 95; 107 S. C. 215; 76 S. C. 584. *Women's names should have been put in jury box:* Const. U., S., 19th Amendt.; 32 Stat. 268; 87 So. 588; 103 U. S. 370; 1 Civ. Code 1912, Sec. 4017; 218 U. S. 161. *Charge as to value of direct and circumstantial evidence was erroneous:* 108 S. E. 94. *Juror who said it would take strong evidence to change his opinion was ineligible:* 103 S. C. 220; 56 S. C. 584; 49 S. C. 285; 85 S. C. 275.

*Messrs. A. J. Hydrick,* Solicitor, *M. L. Smith, J. L. Dukes and Sims & Sims,* for respondent, cite: *Fitness of juror question for Circuit Judge:* 95 S. C. 455; 32 S. C. 45; 34 S. C. 16; 48 S. C. 1; 85 S. C. 143; 100 S. C. 33; 54 S. C. 147. *Judge can charge law in his own language:* 91 S. C.104; 94 S. C. 224. *Sentence is within discretion of trial Court:* 113 S. C. 103. *Self defense:* 114 S. C. 241; 107 S. E. 147. *Rights of accused as to jury:* 13 S. C. 285; 16 S. C. 377; 32 S. C. 27; 35 S. C. 28; 92 S. C. 236. *Qualified juror:* 58 S. C. 106; 55 S. C. 93; 107 S. C. 215. *Circumstantial evidence:* 66 S. C. 23 *Competent juror:* 20 S. C. 441; 36 S. C. 479; 43 S. C. 95; 65 S. C. 242; 65 S. C. 321; 89 S. C. 268.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The setting of this case with its events in a scene of indictment charging him with the murder of one J. H. Patterson on November 14, 1920, and was sentenced to imprisonment for a term of nine years.

The appellant was convicted of manslaughter under an blood, gathered from the lips of the defendant himself, puts him in an attitude of wrong, and leads to the conclusion that the jury took a merciful view of his offense, if they were convinced, as their verdict shows, that his plea of self-defense was not sustained.

Prior to his relations with Mrs. Star Jackson (daughter of Mr. A. F. Sain), a widow, and a sister-in-law of the defendant, he had been twice married. His first wife died, leaving several small children. At that time Mrs. Jackson was employed in the bank of which the defendant was cashier. Friendly, if not affectionate, relations, perfectly legitimate, sprang up between them, and marriage was discussed, but abandoned. The defendant married a young woman from Charleston, but lived with her only a few years. They separated, and he had begun divorce proceedings, claiming to be a resident of Augusta, Ga. The defendant removed to Greenville, but made occasional business visits to his former home. Upon one of these visits in October, 1920, he insisted upon marriage with Mrs. Jackson. He knew that his divorce had not been perfected, but carried her to a magistrate, where the ceremony was performed without a license. The couple then went to the home of Mrs. Jackson's family, reported their marriage, and spent the night there. The next day they motored to Columbia and spent the night at a hotel, going from there to Greenville, where she was installed as the mistress of his home. In the meantime Mr. and Mrs. Sain, having learned that

34 S. C.—120.

there was doubt as to the divorce, went to Greenville and interviewed the defendant. He admitted that the divorce had not been perfected, and Mr. and Mrs. Sain returned to Rowesville, their home, taking their daughter with them, the defendant accompanying them as far as Columbia. The following week the defendant returned to Rowesville and went to Mr. Sain's house to see Mrs. Jackson. He was not allowed to see her, in which exclusion Mrs. Jackson actively participated, and returned to Greenville. He had led her into a state of concubinage knowingly. He says that she knew that the divorce had not been perfected, a statement hardly supported by her determination not to see him. During the week of the homicide he returned to Orangeburg and was again unable to communicate with Mrs. Jackson. He started to return to Greenville, got as far as Columbia, and returned the night of the homicide. When he reached the Sain house about 8 p. m. an automobile was standing at the gate. He testified that he did not know that Patterson was there, thought Mrs. Jackson was having company, and determined to wait until the company left and then have an interview with her at the window, as he had been forbidden to enter the house. He took several short runs in his car, "killing time," and walked around for about an hour waiting for the company to leave. About 11 o'clock Patterson came out of the front door, and begged Mrs. Jackson to go with him. She refused. He put his arms around her and kissed her and went to his car. The defendant was then standing near Patterson's car, and when Patterson turned on the lights he saw the defendant and asked, "Who is that?" The defendant answered, giving his name, and testified that Patterson with a threat started to attack him, when he fired rapidly, inflicting fatal wounds. Patterson had a pistol in his overcoat pocket, but did not draw it. The evidence tended to show that the ground around the car had been tramped down to some extent, as by some one

waiting and the tires of the car had been cut. On the last trip the defendant had seen Patterson on the street and had remonstrated with him for calling upon "my wife." Patterson promised to desist. He appeals to this Court upon 14 exceptions which raise various questions. They will be considered in their logical order.

1. Was there error in refusing the defendant's motion to quash the entire venire of petit jurors upon the ground that all women electors were excluded from the jury box when it was made up in December, 1920? The appellant's contention is that the jury commissioners of the County of Orangeburg deliberately failed and refused to select any women for jury duty, although there were many women within the County of Orangeburg qualified for jury service, but selected only men, which was and is contrary to the rights of the defendant under the Constitution of the United States and the State of South Carolina. This contention necessarily rests upon the propositions: (1) That the Nineteenth Amendment confers upon women the right of suffrage; and (2) that the right or privilege of, or amenability to, jury service, is implied in the constitutional grant of the right of suffrage. Neither of these propositions can be sustained. The amendment is as follows:

"The right of the citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex."

It is a popular, but a mistaken, conception that the amendment confers upon women the right to vote. It does not purport to do so. It only prohibits discrimination against them on account of their sex in legislation prescribing the qualifications of suffrage, a very different thing from conferring the right to vote, which is left to legislative enactment, restrained only by the inhibition against the prescribed discrimination.

The Nineteenth Amendment is in the precise terms of the Fifteenth, with the substitution of the word "sex"

for the words "race, color or previous condition of servi-
tude." It has been repeatedly held by the Supreme Court
of the United States that the Fifteenth Amendment does
not confer upon colored men the right of suffrage; it only
forbids discrimination.    *U. S. v. Reese*, 92 U. S. 24; 23 L.
Ed. 563.   See other authorities cited in 9 Rose's Notes, p.
56.   The Nineteenth Amendment must, of course, receive
the same construction. If, therefore, the privilege of jury
service can be implied from the right of suffrage, which
we deny, it could not be claimed as a constitutional right
unless the right from which it is derived is conferred by
the Constitution.

Can it be said that the right to jury service is
implied from the grant of the right of suffrage,
assuming that the effect of the amendment is to
confer that right?

The right to vote and eligibility to jury service are sub-
jects of such diverse characteristics and demanding such
different regulations that it is impossible to consider the
one as implied in the other. To hold that one who is a
qualified elector is ipso facto entitled to jury service is
to deprive the Legislature of the right to prescribe any
other limitation upon the right to jury service. It could
not prescribe the age limit, the sex, or the mental, moral,
or physical qualifications of a juror, matters which ap-
peal so strongly to the judgment, in prescribing the fitness
for their responsible duty, with due regard to the
sensibilities and delicacy of feeling of those involved.

The Constitution of Wyoming (Const, art. 6, § 1)
provided:

"The rights of citizens of the State of Wyoming to
vote and hold office shall not be denied or abridged on
account of sex. Both male and female citizens of this
State shall equally enjoy all civil, political and religious
rights and privileges."

In the case of *McKinney v. State,* 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710, the defendant moved to quash the venire upon the ground that the Constitution gave women the right to serve as jurors, and that, as only men had been drawn, the venire was illegal. The Court held against the contention, saying:

"The right to vote and hold office does not include the right, if right it may be termed, to serve as a juror."

In *Strauder v. W. Va.,* 100 U. S. 310; 25 L. Ed. 664, a case involving the Fifteenth Amendment, the Court said:

"We do not say that within the limits from which it is not excluded by the amendment a State may not prescribe the qualifications of its jurors and in doing so make discriminations. It may confine the selection to males, to freeholders, * * * to persons within certain ages, or to persons having educational qualifications."

See, also, *State v. James* (N. J. Err. & App.) 114 Atl. 553, 16 A. L. R. 1141, where the same question arose and is quite interestingly discussed.

Another ground for denying the right of the defendant to raise the question of the exclusion of women from the jury lists is the fact that he does not belong to the excluded class. *State v. James* (N. J. Err. & App.) 114 Atl. 553, 16 A. L. R. 1141; *McKinney v. State,* 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710, and cases cited in the latter case.

Not being implied in the Nineteenth Amendment, the right of jury service by a woman is expressly denied by the State Constitution (article 5, § 22). "The petit jury of the Circuit Courts shall consist of 12 men." The further provision in that Section, "Each juror must be a qualified elector," does not confer upon every elector, male or female, the right to jury service. It means that every juror must be a qualified elector, not that every qualified elector shall be a qualified juror.

It is understood that our discussion and decision is limited to a construction of the Nineteenth Amendment. The effect of the Fourteenth Amendment upon a similar contention raised by a woman upon trial is not intended to be decided. As indicated above the defendant is not entitled to raise this question under the Fourteenth Amendment for the reason that he is not a member of the alleged excluded class.

2. Was there error in refusing to quash the entire venire of petit jurors upon the ground that all of the jurors were served by mail, and because two of the jurors, P. E. Gibson and L. T. Gleaton, who did not appear, had not been personally served? This question, though raised in the exceptions, has not been discussed in argument, and will not for that reason be considered.

3. Was there error in refusing to hear testimony to show that the juror L. T. Gleaton had not been served and was not a competent juror? The same thing may be said of this question.

4. Was there error in not sustaining the defendant's objection to the competency of certain jurors who had not paid their poll and property tax six months prior to the date of the trial? As the appellant more concisely states the question:

"Can a person perform jury service over objection who has not paid his taxes six months prior thereto?"

The qualifications for jury duty and for voting are not the same. The Constitution (article 5, § 22) provides:

"Each juror must be a qualified elector under the provisions of this Constitution, between the ages of 21 and 65 years and of good moral character."

We note at once that his qualifications must be more extensive than that of a qualified elector, that is in respect to age and character; so that, although he may be a qualified elector, he may not be a competent, in the sense of a qualified, juror.

A qualified elector is a citizen, male or female, of the State, 21 years of age and upwards, not laboring under the disabilities named in the Constitution and possessing the qualifications required by it (article 2, § 2), among which, as this Court has held in *Mew v. Railroad Co.,* 55 S. C. 90, 32 S. E. 828, is registration; so that in short a qualified elector is a registered elector (though in passing the writer feels constrained to say that in his opinion the logic of Chief Justice McIver's dissent to the proposition that registration is essential to constitute one a qualified elector is unanswerable). Assuming, then, that registration is essential to the perfected status of a qualified elector, then it is clear that under the section first quoted a juror must be a registered elector, and that he cannot be registered without complying with the requirements for registration. It will be noted that the requirements for registration do not include the payment of taxes; that is specifically made a condition for voting. The elector is a qualified elector when he shall have been registered. He, as a qualified elector, may exercise the right to vote upon compliance with the requirements as to payment of taxes. If he shall have been registered prior to January 1, 1898, he remains a qualified elector for life, regardless of the payment of taxes, but he cannot exercise the right of voting without complying with these requirements. If he shall have been registered after January 1, 1898, he remains a qualified elector until the next enrollment period, similarly regardless of the payment of taxes and subject to the same conditions as to voting. If any elector of either class, within the period in which he remains a qualified elector, desires to vote, he must comply with the requirements as to the payment of taxes; but his status as a qualified elector is not destroyed by his nonequipment for voting at a particular election. Upon refusal of his right to vote for such nonconformity, he leaves the ballot box as a qualified elector still, and without further ceremony

may equip himself for voting at a subsequent election; otherwise he would be obliged to renew his application for registration after every election at which he was not equipped as a voter, and the provisions of the Constitution as to remaining a qualified voter for the periods indicated would be annulled.

5. Was there error in not sustaining the defendant's objection to the competency of the juror W. D. Blanton upon the ground that upon his *voir dire* examination it was shown that he was not an indifferent juror?

The matter of the indifference of the juror is in the discretion of the presiding Judge. It appears from the examination that the juror had at the outset an exceedingly mild impression of the facts of the case from what he had heard and read; that he stated that he would, if selected as a juror, absolutely leave that impression behind and be governed solely by the testimony from the stand. It is true that upon a long and tedious examination he made statements in reference to the preponderance of the testimony necessary to efface the impressions formed largely in the words of examining counsel, which, taken alone, would possibly disqualify him, but the general trend of his examination impresses us with the conviction that he was conscientious and honest and would be governed by the testimony on the trial alone. The Circuit Judge seems to have been of that opinion also, and wisely exercised his discretion in having him presented.

In addition to this it is settled by the decisions of this Court as follows, quoting from *State v. Williamson*, 65 S. C. 242, 43 S. E. 671:

"The first six exceptions complain of error in not excluding as incompetent certain jurors who, when examined upon their *voire dire*, said they had formed and expressed their opinion as to the guilt or innocence of the accused, and that it would require evidence on the part of the defendant to remove that impression from their minds.

Section 2944, Code 1902, provides the Court, on motion of either party to suit, shall examine any person called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and further provides that the juror shall be placed aside "if it appears to the Court that the juror is not indifferent in the cause. Numerous cases from *State v. Dodson,* 16 S. C. 450, to *State v. Robertson,* 54 S. C. 151, construing the statute, declare that it invests the Circuit Court with exclusive power to determine whether a juror, after examination on his *voir dire,* is indifferent in the cause. Whether a juror is indifferent in the cause is a question of fact which is not reviewable in this Court, unless perhaps it should appear that the conclusion of the Circuit Court is wholly without any evidence to support it. In this case, while it is true the jurors when examined said they had formed or expressed an opinion as to the guilt or innocence of the accused, and that it would require evidence to remove that impression from their minds, they also declared that they were not conscious of any bias or prejudice for or against either of the defendants, and would decide the case according to the evidence, uninfluenced by such opinion. It cannot, therefore, be said that the conclusion of the Circuit Court was without any evidence to support it."

6. Was there error in not excluding the testimony of A. F. Sain as to a conversation with the defendant at Greenville several weeks prior to the homicide? The exception points out no specific error and for that reason need not be considered; but, in view of the entire circumstances of the case, there was no error in allowing Sain to detail the conversation with the defendant. There was nothing in it that the defendant did not admit when he took the stand.

7. Was there error in not excluding the testimony of Emma Eugenia Sain, as to a conversation with the defendant at Greenville several weeks prior to the homicide? The record does not disclose that any objection was made to the testimony of the witness as to this conversation, and it cannot therefore be made the ground of an exception.

8. Was there error in not excluding the testimony of Emma Eugenia Sain detailing a conversation overheard by her between the defendant and her father, J. C. Whetstone, several weeks before the homicide? The witness Mrs. Sain, mother of Mrs. Jackson, with whom the defendant had gone through a marriage ceremony which he knew was invalid, testified that after her return from Greenville, whither she had gone to bring her daughter home after knowledge of the fictitious marriage ceremony, Mittle came to her house looking for Mrs. Jackson. While he was there Mr. Whetstone, the aged father of Mrs. Sain, came into the room and inquired what the trouble was. The question was asked the witness, "What did your father say?" Her answer was interrupted by objection and a lengthy colloquy. The record does not show that Mrs. Sain was allowed to detail any conversation between Mr. Whetstone and the defendant, only that Mr. Whetstone ordered Mittle off the place, and forbade him to come there.

9. Was there error on the part of the Circuit Judge in charging the jury, "Circumstantial evidence, when properly made out, is as good as direct testimony; the same being a charge upon the facts and an instruction as to the weight to be given certain testimony? Assuming that the charge complained of was erroneous, which we do not at all concede, the verdict of manslaughter renders the fault innocuous. The circumstantial evidence in the case indicated that some one had been lying in wait, and had made sure of his victim's inability to escape by cutting

the tires of the car, putting it out of commission. If the jury had believed that the defendant had done this and for the purpose indicated, they could not have escaped returning a verdict of guilty of murder. It must be assumed, then, from their verdict of manslaughter, either that no such circumstances existed, or that the defendant was not connected with them.

10. Was there error in refusing a certain request to charge preferred by the defendant?

The fourteenth exception is as follows:

"Because there was error in his Honor refusing to charge the jury the following request of the defendant made in writing: Counsel for the State in argument states: "A verdict of not guilty in this case would mean an approval of an adulterous intercourse between the defendant and Mrs. Jackson." By request of the counsel for the defendant I charge you: You are not trying the question as to whether the relations between the defendant and Mrs. Jackson were adulterous or illegal; that is not the question you are trying in this case at all; but, on the contrary, you are only passing upon the question whether or not the defendant should be convicted of the murder of Patterson or be acquitted under his plea of self-defense—the error being that the defendant was entitled to this request in order to correct the statement of counsel in argument, which statement was beyond and not within, the record, and, if not challenged, would have left it open to the jury to pass upon a question and offense not charged in the indictment.".

The request was fully covered by the Circuit Judge in his charge:

"I charge you that you are not trying the defendant, Mittle, for bigamy or an unlawful marriage. You are trying him for murder under the indictment in this case and for no other alleged crime or offense."

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE MARION (concurring): I concur in the opinion of Mr. Justice Cothran. After a careful scrutiny of the appeal record and mature consideration of the assignments of error, I have been unable to reach the conclusion that prejudicial error of law was committed.

The contention so strongly urged in argument that the trial Judge committed prejudicial error in failing to sustain the defendant's objection to the juror, W. D. Blanton, has been accorded especial attention. The juror, Blanton, did not sit upon the jury that tried the defendant. He was excluded by the peremptory challenge. It is not to be denied that the right to peremptory challenge is a valuable one, and that there would have been reversible error if defendant had been improperly forced to challenge peremptorily a juror who should have been excluded for cause. But the constitutional right of a defendant charged with crime to an impartial trial by jury is necessarily subject to reasonable regulation by the legislative power. *State v. Wyse,* 32 S. C., at page 55, 10 S. E., 612. The statutes regulating the right of a defendant in a criminal cause to obtain an impartial jury are those embodied in Section 82, Criminal Code of 1912, providing for peremptory challenges, and in Section 4045, Civil Code of 1912, providing for the examination by the trial Court of any person called as a juror as to bias or prejudice in the cause, etc. The latter section provides that—

"If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called."

The statutory method thus prescribed for securing an impartial jury is a combination of (1) the peremptory challenge and (2) of the challenge for cause after the examination of the juror on his *voir dire.* But in construing the statute (now Section 4045, Civil Code of 1912) this Court has repeatedly held that it was the intent of the Legislature

to invest the Circuit Judge with the exclusive power to determine the juror's competency as a matter of fact, and that "his determination of this question of fact cannot be reviewed by this Court. Mr. Chief Justice McIver in *State v. Robertson,* 54 S. C., 152; 31 S. E., 868. See *State v. Dodson,* 16 S. C., 453; *State v. Williams,* 31 S. C., 238; 98 S. E., 853; *State v. Merriman,* 34 S. C., 16; 12 E., 619; *State v. James,* 34 S. C., 49; 12 S. E., 657; *State v. Haines,* 36 S. C., 504; 15 S. E., 555; *Sims v. Jones,* 43 S. C., 91; 20 S. E., 905,; *State v. Williamson,* 65 S. C., 244; 43 S. E., 671. It is true the Court has in other cases expressly recognized that it is within the province of this Court to correct an abuse of discretion on the part of the Circuit Judge in the exercise of the power thus delegated. *State v. Coleman,* 20 S. C., 449; *State v. Murphy,* 48 S. C.,. 1; 25 S. E., 43; *State v. Summers,* 36 S. C., 479; 15 S. E., 369; *State v. Milam,* 65 S. C., 321; 43 S. E., 677; *State v. Bethune,* 85 S. C., 143; 67 S. E., 466; *State v. Sanders,* 103 S. C., 220; 88 S. E., 10. The only case cited by appellant, however, in which this Court has held that the Court below was guilty of an abuse of discretion, is the case of *State v. Sanders, supra.* The nature of the bias acknowledged by the juror (a white man) in that case was somewhat violent antipathy to the idea of sitting on a jury where the defendant, a negro, was defended by a negro lawyer. In no case that has come to my attention has this Court held that the Circuit Judge was guilty of abuse of discretion in failing to stand aside a juror on the ground that he had formed or expressed an opinion that it would require evidence to remove. Obviously in such a case the Circuit Judge's power should be exercised with the utmost circumspection. But to say as a matter of law that a trial Judge erroneously exercised his discretion in failing to stand aside a juror who has formed and expressed such an opinion as would require evidence

to remove would, as was said by this Court (McIver, A. J.) in *State v. Dodson, supra*—

"have the effect of excluding from the jury box, in any case of such magnitude or public interest as would be likely to attract attention, the very class of persons who would be best qualified to occupy that position, for in cases of that character it would be difficult to find persons of ordinary intelligence who had not received some impressions in regard to a case from what they had heard or read in the newspapers."

In the case at bar the strongest expression elicited from the juror, Blanton, in response to repeated leading questions propounded by defendant's counsel was his answer to this question:

"Q. Unless the greater weight of the testimony is given on the other side, from the views you have now, you would still maintain those views? A. Certainly, because if the other side don't prove to be the stronger, that would prove mine was the stronger."

In so answering the juror simply stated a conclusion that was inevitable if he entertained any opinion at all. There is nothing in the juror's statements indicating that his formed opinions or views were against the defendant. In the case of *State v. Williamson, supra,* the jurors challenged had formed and expressed opinions which "would require evidence on the part of the defendant to remove." In view of the reiterated statements of the juror, Blanton, in the case at bar to the effect that he would bring in a verdict according to the law and the evidence, and that he was sensible of no bias or prejudice that would prevent him from so doing, I am clearly of the opinion that there was no such abuse of the trial Judge's discretion as amounted to error of law.

MR. JUSTICE WATTS (dissenting): The appellant was tried at May term of Court for Orangeburg County, 1921, before Judge Bowman and a jury, charged with the murder

of J. H. Patterson. He was convicted of manslaughter with a recommendation to mercy, and sentenced to nine years' imprisonment. He appeals, and by 14 exceptions imputes error. These 14 exceptions may be grouped under three heads: First, error in the formation of the jury; second, error in admitting testimony; third, error in the Judge's charge to the jury.

Under the first group it is contended that a juror cannot sit over objection who has not paid his taxes six months prior to said service. The testimony shows that 19 of the jurors had not paid their poll and property taxes for the fiscal year 1920 (which taxes were due on October 15, 1920, and payable until December 31, 1920) until after January 1, 1921, and were called on May 1, 1921, within less than six months, to perform jury service. His Honor overruled all objections made on this ground and ordered these jurors presented. Appellant exhausted all of his challenges before the jury was complete. All of the jurors had paid their taxes before they were called as jurors, except the juror, J. D. Early. He was 52 years old, and had not paid his poll tax at all. J. H. Fabian was permitted to pay his taxes when called to serve. All were competent jurors, under the opinion of Chief Justice McIver in *State v. Weaver,* 58 S. C., 106; 36 S. E., 499, and *Garrett v. Weinberg,* 54 S. C., 145; 31 S. E., 341; 34 S. E., 70, except Juror Early. He was not a competent juror. He was liable to pay poll tax, and he had not paid it. He should have been excluded.

Was Juror Blanton an indifferent juror? He stated on his examinations that he had formed an opinion in the case, and that the opinion was so strong that it would not only take testimony, but strong testimony, the preponderance of testimony, to remove such opinion. From his answers he was not an impartial and indifferent juror. It will be seen from the examination of this juror that he admits that he had formed an opinion amounting to a prejudgment

of the case, and that should have rendered him incompetent, whether he had expressed it or not. He says in examination on his *voir dire* that he had an opinion, and it would require evidence to remove. 24 Cyc. 293, says:

"It has been held that the juror should be held incompetent if he states that he has formed an unqualified, fixed, or either a rather positive opinion which will require evidence to remove, or that to remove it would take conclusive, strong, or considerable evidence, or where the juror seems uncertain as to whether the opinion will yield to evidence and not affect his verdict."

It will be seen that the juror had formed such an opinion that he was prejudiced, and could not render a fair and impartial verdict, under the evidence in the case, and his Honor was in error in holding him a competent juror.

There should be a new trial on the ground that Juror Early had not paid poll tax, and that Juror Blanton was not an indifferent juror. It is not necessary to consider further the exceptions.

Mr. Justice Fraser: I concur on the ground that the juror, Blanton, was not a disinterested juror. I think Early was qualified.